540 P.2d 153

**The ARIZONA STATE DEPARTMENT OF ECONOMIC SECURITY, Petitioner,**

v.

**The Honorable T. J. MAHONEY, sitting as Judge in Division One of the Superior Court of the State of Arizona, IN AND FOR the COUNTY OF PIMA, Respondent,**

**Shirley CHICO, Real Party in Interest.**
**No. 2 CA–CIV 1944.**

Court of Appeals of Arizona,
Division 2.

Sept. 15, 1975.

Rehearing Denied Oct. 22, 1975.
Review Denied Nov. 25, 1975.

Bruce E. Babbitt, Atty. Gen., by Charles E. Buri, Asst. Atty. Gen., Tucson, for petitioner.

Rodney B. Lewis, Sacaton, for respondent and real party in interest.

OPINION

HOWARD, Chief Judge.

This special action is directed to a juvenile court order which set aside a prior severance order. Although the subject order is appealable as a special order after judgment, and petitioner has perfected an

appeal therefrom, we accept review by special action since appellate courts strain to expedite matters involving minor children.[1]

In November, 1971, the three minor children were adjudicated dependent children and their legal care, custody and control was placed with the Arizona State Department of Economic Security (hereinafter referred to as Department). At that time, the children were four, six and eight years old respectively. They resided in foster homes until July 24, 1974, when the Department filed a petition for termination of the parent-child relationship between the natural mother and the children. (The father was deceased.)

A hearing was held on December 4, 1974, at the conclusion of which the juvenile court ordered severance of the parent-child relationship. Subsequently, on December 24, a formal signed order was entered. The court found that the mother had abandoned the children and had made little or no effort to maintain a parental relationship; that she had provided little or no support for the children and any efforts to contact them had been token in nature; and that the mother had neglected the children. The Department was awarded legal custody of the children and authorized to place them for adoption. No appeal was taken from the severance order.

On June 23, 1975, the mother filed a motion to set aside the order pursuant to Rule 60(c), Arizona Rules of Civil Procedure, 16 A.R.S. Appended to the motion were three affidavits. One affidavit, that of the mother, recited that she was a Pima Indian and the children's father was a Papago Indian; that she did not realize her children were taken away from her forever until this was explained to her by a social worker for the Bureau of Indian Affairs; that she did not understand what was happening at the severance hearing and did not completely understand what the attorney who represented her explained to her;

that he might have told her what the hearing was about and about her right to appeal but she was not aware of her rights until recently; and that she had maintained contact with her children.

Another affidavit was that of the children's foster mother for a period of two and one-half years prior to March 29, 1975. She stated that she had had fairly close contact with the mother during this period; the mother had always been concerned about the children's health and welfare and during 1974 had been very attentive to her children, making about fifteen inquiries concerning their welfare; the mother gave each of her sons birthday presents and brought them Christmas gifts; the mother visited the children during 1974; and one reason the mother did not maintain close contact prior to 1974 was because of the Department's policy of discouraging her visits; also the mother could not visit her children whenever she wanted because her working hours sometimes interfered with the foster mother's schedule for the children. According to the foster mother:

"I believe she has some personal problems which she seems to be working out, but her conduct and contact with her children while they were under my care indicates her love and concern for them. The boys in turn love their mother and are strongly attached to her."

A third affidavit was that of a social worker for the Bureau of Indian Affairs, Papago Agency, Department of the Interior, who was the case worker for the natural mother. The affiant was a Papago Indian who had worked very closely with the natural mother regarding the termination of her parental rights. She stated:

"It is my opinion that Shirley Chico did not understand the nature of the proceeding in December and that she did not realize the serious consequences which resulted. She was unaware that

1. The issues have been fully briefed and argued in this proceeding, therefore no useful purpose would be served by requiring duplication of effort in prosecuting an appeal.

the end of her relationship with her children was at stake. In my mind Mrs. Chico did not understand the nature of the proceedings and was not able to communicate with her court appointed attorney because of the vast cultural barrier between Indians and non-Indians. This lack of communition [sic] existed because of her lack of familiarity with the English language. My experience has demonstrated to me that there are many Indians in [natural mother's] position. Even though they live in a non-Indian environment they are not part of the world of non-Indians and only exist through a variety of methods of accommodation.

In both the Papago and Pima tradition a severance of parental rights is unknown and [natural mother] has found it extremely difficult to understand her present situation. Though she has many personal problems, I believe she has responded well to counselling and will soon be able to assume full responsibility for her children."

The motion to vacate was heard by a judge other than the one who had ordered severance. At the conclusion of arguments, the court stated:

"I don't take any issue with you that the Court had no other alternative at that time, but things have changed and this is the first time these people have had any representation."

The court then requested a report on the present status of the children which reflected that two children had been placed in one adoptive home on March 28, 1975 and the other child had been placed in another adoptive home on February 15, 1975. The respective petitions for adoption were not to be heard until December, 1975. The court then granted the motion for relief "under the provisions of Rule 60C–1, 2 and 6" of the Rules of Civil Procedure, indicating that it was reopening the matter solely for the purpose of determining whether or not it was in the best interest and welfare of the minor children to remain with their natural mother and not be separated from her by the adoption proceedings.

A juvenile court order is final when entered in the minutes of the juvenile court. Rule 25(a), Rules of Procedure for Juvenile Courts. Since the motion to vacate was filed more than six months after the December 4 minute entry order of severance, a motion to vacate on the grounds of newly-discovered evidence or excusable neglect was barred by Rule 60(c). Therefore, the only question is whether the respondent court properly granted relief under Rule 60(c)(6) which does not have the six-month limitation.

■ Subsection (6) permits the court to grant relief from a final judgment for "any other reason justifying relief from the operation of the judgment." Initially we note that the instant situation is not one where judgment was granted by default. In default judgment situations, however, the courts of the state have repeatedly recognized that all doubts should be resolved in favor of a trial on the merits. In exercising its discretion, the respondent court apparently concluded that, because of a combination of unusual circumstances, the natural mother had not had an adequate opportunity to present her side of the case.

■ Rule 60(c) is not designed to be a substitute for appeal, *Kowall v. United States,* 53 F.R.D. 211 (W.D.Mich.1971), nor is it designed to be a vehicle for relitigating issues. *State v. Swingle,* 110 Ariz. 66, 514 P.2d 1254 (1973). Rule 60(c)(6) has been recognized as giving courts ample power to vacate judgments whenever such action is appropriate to accomplish justice. 11 Wright and Miller, Federal Practice and Procedure § 2864 (1973) and cases cited therein. Severance of the parent-child relationship is a serious matter and as Division One of this court stated in In Re Adoption of Hammer, 15 Ariz.App. 196, 199, 487 P.2d 417, 420 (1971):

"It is the opinion of this court that the courts of this state should prior to the

granting of a decree of adoption exercise judicial vigilence in assuring the rights of the natural parents are not only adequately protected, but are also adequately considered and the enormity of severing parental ties are thoroughly brought home and understood by all parties."

■ At the severance hearing, the only witnesses who testified were the natural mother and a social worker. Although the transcript reflects that the mother was able to respond to questions propounded to her, we cannot say her understanding of the nature of the proceeding was thereby ipso facto established. The affidavits appended to the motion to vacate, which are uncontroverted, indicate the contrary.

The respondent court also seemed to be concerned about the adequacy of the representation afforded the natural mother. While it is true that her representation at the severance hearing was not reduced to a "farce" or "sham," the record does reflect that court appointed counsel merely reviewed the file and conferred with the mother in preparation for the hearing.[2]

■ The respondent court did not abuse its discretion in setting aside the severance order and reopening the case under the circumstances presented here. Preservation of the family relationship is of prime importance and the court may have had serious doubts as to whether sufficient efforts were undertaken to preserve the relationship. The record does not reflect, as in *Hernandez v. State ex rel. Arizona Department of Economic Security*, 23 Ariz. App. 32, 530 P.2d 389 (1975), significant rehabilitation efforts to preserve the relationship. Furthermore, since the matter of adoption was not to be heard until December 1975, no one would be hurt by affording the mother a more meaningful hearing. We cannot say that the respondent court erred in striving to achieve "fundamental fairness," keeping in mind the rights of the natural mother and the welfare of her chil-

dren. Termination of the parent-child relationship should not be considered a panacea but should be resorted to only when concerted effort to preserve the relationship fails.

Affirmed.

KRUCKER and HATHAWAY, JJ., concurring.

---

2. This information is gleaned from the affidavit of counsel with respect to compensation for services rendered.