[No. D002166. Fourth Dist., Div. One. Nov. 22, 1985.]

In re RAYMOND H., JR., a Minor.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES,
Petitioner and Respondent, v.
RAYMOND H., SR., Objector and Appellant.

**558**

### COUNSEL

Charles R. Khoury, Jr.,, under appointment by the Court of Appeal, for Objector and Appellant.

Lloyd M. Harmon, Jr., County Counsel, and Susan J. Boyle, Deputy County Counsel, for Petitioner and Respondent.

### OPINION

**STANIFORTH, Acting P. J.**—Raymond H., Sr. (Raymond Sr.), father of three-year-old Raymond H., Jr. (Raymond Jr.), appeals an order under Civil Code section 232,[1] freeing the minor from the custody and control of his natural parents. The court found the requirements of section 232, subdivisions (a)(1) and (a)(7), were proved by clear and convincing evidence. Custody was taken from the father and mother for abandonment (§ 232, subd. (a)(1)), and failure to provide a home (§ 232, subd. (a)(7)). The charges of unfitness to adequately care for the minor (§ 232, subds. (a)(2) and (a)(4)) due to the father's conviction of first degree murder and the inability of the mother, due to the habitual use of alcohol/controlled substances, were dismissed. The father appeals.

### FACTS

Raymond Jr. was born June 22, 1981, a heroin addict. There were visible track marks on his mother's arm as well as the exhibition of withdrawal

---

[1]All statutory references are to the Civil Code unless otherwise specified.

symptoms by the infant. He was detained on a court ordered hold at the hospital. A week after his birth a petition under section 300, subdivision (a), of the Welfare and Institutions Code was filed, alleging Raymond Jr. had no parent or guardian capable of exercising parental control and he was diagnosed as being born under the influence of narcotics or dangerous drugs. A true finding was made. Raymond Jr. was ordered detained in either a licensed foster home or the Hillcrest Receiving Home. Raymond Jr. was placed in the Bowman foster home.

An attempt was made at reunification. Upon a hearing (Dec. 1, 1981) the mother agreed to a plan of complete rehabilitation by finishing the Metamorphosis Rehabilitation Plan which includes a one-year residence plus reentry phase. The mother did not comply with the plan. The father was later convicted of first degree murder and incarcerated in prison. He was sentenced to a 28-year to life sentence.[2]

Due to these circumstances, Raymond Jr. was referred to adoptions and in March 1984 the subject petition was filed. The father responded opposing the petition and testified at the section 232 hearing. He admits he was in jail when Raymond Jr. was born; he visited the child at Hillcrest within a week or two of his birth on about three or four occasions. He asserts Raymond Jr. was placed in a foster home unknown to him. However, Raymond Sr. saw the child at the House of Metamorphosis two or three months later. He visited the child there three or four times when the child was taken to the house to visit the mother. He and the mother also visited the child in the foster home in Vista. The mother had obtained the address of the foster home from a social worker.

Raymond Sr. said he lost the use of his automobile at that time. He was arrested in January 1983 and placed in custody for six months. He was released in June 1983, then rearrested for murder on July 23, 1983. He has been in custody continuously since that date. The only communication he received concerning his child was the certified letter from the probation department to which he responded. He testified if he were awarded custody of the child he wanted his sister, Shirley McGee, to take care of the child because he was in prison. McGee is 15 years older than Raymond Sr. and helped raise him. It was stipulated if Raymond Sr.'s sister were to testify, she would testify she is 36 years old, has a 3-bedroom house with her husband and Raymond Sr.'s brother. She has no other people living with her at home and is capable and willing to take care of Raymond Jr. The

---

[2]The judgment convicting Raymond Sr. of first degree murder was recently reversed by this court in a decision filed September 24, 1985. Reversal in that case does not in any way affect the decision reached in the present case.

stipulation was accepted but objected to on grounds of lack of relevancy. Said the court "placement at this trial is irrelevant. The sole issue is . . . whether the child should be freed from his custody and control, not where the child would go."

## DISCUSSION

### I

Raymond Sr. contends the trial court had a duty to consider a less drastic alternative to termination of his parental rights and failed to do so. Raymond Sr. asserts the court should have considered placing the child with Raymond Sr.'s sister in lieu of terminating the parent-child relationship.

Raymond Sr. cites *In re Angelia P.* (1981) 28 Cal.3d 908 [171 Cal.Rptr. 637, 623 P.2d 198], in support of his argument the court failed to consider alternate care plans for Raymond Jr. before terminating the parent-child relationship. In *Angelia P.,* the trial court found that Angelia should be declared free from the custody and control of her parents on the grounds her father, who was in prison, had been convicted of felony child abuse resulting in permanent brain damage to the child, proving his unfitness to have future custody and control over the minor (§ 232, subd. (a)(4)); both parents had neglected or abused the child who had been a dependent child of the juvenile court and removed from parental custody for at least one year (§ 232, subd. (a)(2)); Angelia had been under foster care for more than two years and her natural parents were unlikely to provide a home for her, or meet the other statutory responsibilities described in section 232, subdivision (a)(7). On appeal from the judgment freeing Angelia from the custody and control of her parents, the parents argued the trial court failed to consider alternate care plans for Angelia and should have considered the possibility of maintaining the status quo until the father could obtain counseling (for child abuse) and reestablish himself following his release from prison.

The Supreme Court rejected this argument citing with approval from *In re David B.* (1979) 91 Cal.App.3d 184 [154 Cal.Rptr. 63], the following:

" 'It is well recognized that before the parental relationship may be permanently severed, the trial court should consider the availability of less severe alternatives designed to keep the family intact.' [Citation.]" (*In re Angelia P., supra,* 28 Cal.3d 908, 923.)

The court continued:

"However, when such services have not been offered, 'the decision as to whether the services should be ordered and the proceeding delayed until the

results are evaluated lies within the sound discretion of the superior court.' (*In re Susan M.* (1975) 53 Cal.App.3d 300, 311 . . . .)" (*Ibid.*)

The court concluded:

"[T]he trial court properly considered alternatives and was fully free to decide that termination was appropriate. Angelia had been in foster care for almost *four years,* yet her parents, after having rejected an earlier return, requested an even further delay until some uncertain future date when, if all went well, Angelia could be returned to them. Such uncertainty conflicts with the intent of section 232 to afford children during their formative years a permanent, secure, and stable environment. [Citations.]" (*Ibid.*)

In *In re Susan M.* (1975) 53 Cal.App.3d 300 [125 Cal.Rptr. 707], an infant was declared free from the custody and control of her mother upon the grounds of abandonment and neglect. The Court of Appeal reversed the judgment on grounds there was insufficient evidence of parental neglect. The court also held since a judgment freeing a child from the custody and control of its parents results in total severance of natural ties between parent and child, a county welfare department, before initiating proceedings to declare a minor free from the custody and control of its parents, "must consider child protective services as a possible solution to the problems at hand and must offer such services to qualified parents if deemed appropriate under the circumstances. Child protective services are designed to preserve the family unit through education, guidance and other social services, and ordinary concepts of human compassion impel the conclusion that the possibility of offering these services to the parents in a 'last ditch' effort to save the family should be weighed carefully by social welfare departments before such departments embark on a course which at best offers a drastic and irrevocable solution." (*Id.* at p. 311, fn. omitted.)

A careful reading of *In re Angelia P., supra,* and *In re Susan M., supra,* leads to these conclusions: The duty of the trial court to consider less drastic alternatives to termination of the parental right refers to those alternatives that would provide for the reestablishment or continuation of the parental relationship so that it remains intact. These alternatives refer to services and programs that may be offered to the natural parent or parents under Welfare and Institutions Code section 16500 et seq. These sections are designed to assist the parent in his or her efforts to provide for the minor and to regain physical custody of the minor at some future time. (See also *In re Laura F.* (1983) 33 Cal.3d 826, 838-839 [191 Cal.Rptr. 464, 662 P.2d 922].)

Raymond Sr.'s argument the court should have considered placement of the child with Raymond Sr.'s sister obfuscates the purposes of child

protective services and the purposes of the section 232 proceedings with ultimate placement of the child. The object of the section 232 proceedings below involved determination whether award of custody of Raymond Jr. to Raymond Sr. would be in the best interests of the child or whether it would be detrimental to the child. As *Angelia P.* and *Susan M.* elucidate, this determination necessarily involved consideration whether designated services had been offered to assist the parents in reestablishing or continuing the parental relationship. Consideration of the ultimate placement of the minor including the possibility of placing the child with Raymond Sr.'s sister does not address or facilitate the object of these inquiries. "The proceedings to declare a child free from parental control do not involve problems of custody or juvenile court supervision for the subject child. They contemplate the conclusion of such custody problems and not only termination of all parental control but the severance of the relationship between the child and its parent or parents." (*In re Zimmerman* (1962) 206 Cal.App.2d 835, 843 [24 Cal.Rptr. 329].)

As the court in *In re Carmaleta B.*, 21 Cal.3d 482 [146 Cal.Rptr. 623, 579 P.2d 514], in discussing section 232, subdivision (a)(7), stated: "The section, accordingly, balances the interests of the child in secure and sufficient parenting with the conjoined interests of both parent and child in preserving the familial bond. The subdivision has the added advantage of permitting the parents a longer period, two years, in which to rehabilitate themselves to a position whereby they can properly support this most fundamental responsibility. Such an accommodation, inherent in the structuring of section 232, affords the fullest opportunity to the parents for exercise of their rights not inconsistent with the ultimate best interests of the child." (*Id.*, at pp. 491-492.)

Reunification with the child was not sought here by Raymond Sr. The picture is hopeless insofar as any reunification with the parents was a rational possibility. The father cannot offer a home for Raymond Jr. now or in the foreseeable future which would involve either of the natural parents. He sought to have the child placed with his sister. How such a placement would rehabilitate the father or the mother or enhance the possibility of reunification in the reasonably foreseeable future is not apparent.

It should be further noted the sister was not present at the proceedings below. She had not *previously* come forward in the three years since Raymond Jr.'s birth to express any interest in the child. The interests of the father are separate, distinct and apart from the interests of the relative. (*Sweeney* v. *Bowles* (1961) 188 Cal.App.2d 196 [10 Cal.Rptr. 240].)

Raymond Sr.'s reliance upon *In re Jeremy C.* (1980) 109 Cal.App.3d 384 [167 Cal.Rptr. 283], is inapposite. That case relates to an appeal from

an order in a dependency proceeding. A dependency proceeding is grounded upon an aim of ultimately reuniting the family. Proceedings, such as the one under scrutiny here, involving freedom from custody and control of the parents, take place *after* the minor has been made a dependent of the court and after reunification efforts have failed.

■ The record does not support a claim the Department of Social Services was derelict over the past three years in failing to explore and offer services aimed at reunification. These parents did not avail themselves to these services. They simply have not expressed an interest in the child. The evidence is overwhelming that neither parent now or at any reasonable time in the future can provide a home for the child. The "ultimate best interest of the child" must weigh heavily in favor of the trial court's decision not to continue the search for less drastic alternatives. (See *In re Laura F.*, *supra*, 33 Cal.3d 826, 387.)

## II

The court made a finding of abandonment of Raymond Jr. by the parents. Section 232 declares the following to be the essentials of abandonment: "(1) the child must have been left with another, (2) without provision for support or without communication from either or both of his parents for a period of one year (and token efforts to support or communicate may not, in the trial court's judgment, prevent abandonment), (3) intent to abandon, (4) failure to provide or to communicate for one year is presumptive evidence of intent to abandon." (*In re Conrich* (1963) 221 Cal.App.2d 662, 666 [34 Cal.Rptr. 658].)

Raymond Jr. was three years old at the time of trial of this cause. He had been removed from his mother at birth and lived his entire life in foster care. Raymond Sr. claims during this three-year period he visited Raymond Jr. in Hillcrest three or four times when the child was a week to two weeks old. Since the minor was in the Bowman foster home at two weeks of age, three or four visits at Hillcrest Receiving Home had to occur within a one-week period. The father did not visit Raymond Jr. again until sometime in December 1981 when Mrs. Bowman brought Raymond Jr. to the House of Metamorphosis to visit his natural mother. These visits occurred at the request of the mother. Between February 5, 1982, and October 1982, the father had absolutely no contact with the minor. There is no evidence indicating any attempts were made to restrict the father's visits with the child or that attempts were made to interfere with his ability to communicate with the child. Following the October 1982 visit the father had no further contact with the son, although Raymond Jr. remained placed with the Bowmans until the time of trial. The evidence here points to a rational inference the

father intended to abandon the child. With every opportunity open to him to communicate, he made no attempt to avail himself of any of the options. He relied upon others to care for the child.

Raymond Sr.'s expressed intent was the natural mother would rehabilitate and she would take the child. There is a current action now pending against the mother. Therefore, his tactic now is to offer his sister to care for the minor. Only since Raymond Sr.'s recent incarceration has he asserted his love and devotion for the minor.

■ Abandonment and intent to abandon under section 232, subdivision (a)(1) are questions of fact for the trial judge. "His decision when supported by substantial evidence is binding upon the reviewing court. An appellate court is not empowered to disturb a decree adjudging a minor is an abandoned child if the evidence is legally sufficient to support the finding as to the abandonment. This is true, also, on the question of intent." (*In re Gano* (1958) 160 Cal.App.2d 700, 705 [325 P.2d 485].) ■ The underlying purpose of section 232 is to serve the welfare and best interest of the child by providing him with the stability and security of an adoptive home where those conditions are otherwise missing from his or her life. The decision of the judge here was wise and humane.

Judgment affirmed.

Work, J., and Butler, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 13, 1986.