[No. D004212. Fourth Dist., Div. One. Mar. 17, 1987.]

In re SOLOMON L., a Minor.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES,
Petitioner and Respondent, v.
BRENDA L., Objector and Appellant.

**COUNSEL**

Denise Moreno Ducheny, under appointment by the Court of Appeal, for Objector and Appellant.

Lloyd M. Harmon, County Counsel, Daniel J. Wallace, Chief Deputy County Counsel, Greer D. Knopf, Susan J. Boyle and Leonard Pollard, Deputy County Counsel, for Petitioner and Respondent.

## OPINION

WIENER, J.—Brenda L. appeals from the judgment declaring her son, Solomon, free from her custody and control pursuant to Civil Code section 232, subdivisions (a)(2), (a)(3) and (a)(7). Brenda challenges the sufficiency of the evidence as to each of the court's findings and contends the court abused its discretion by refusing to order the "least drastic alternative" of guardianship.

Findings under any subdivision of section 232 "must be made on the basis of clear and convincing evidence." (*In re Angelia P.* (1981) 28 Cal.3d 908, 919 [171 Cal.Rptr. 637, 623 P.2d 198].) We must review the record in the light most favorable to the judgment to determine whether it reveals substantial evidence, evidence which is reasonable, credible and of solid value, such that a reasonable trier of fact could find the termination of parental rights appropriate. (*Id.* at p. 924; *In re Rico W.* (1986) 179 Cal.App.3d 1169, 1173 [225 Cal.Rptr. 472].)

Because each of L.'s contentions is grounded in an overall claim of insufficiency of the evidence, an extended rendition of the facts is in order.

### FACTUAL AND PROCEDURAL BACKGROUND

Brenda married her first husband in 1979 at age 18. Five months later their son Antonio was born. Soon thereafter, Brenda met Eugene L. and ran off with him to California. They married in 1982.

The couple admit it was Eugene who introduced Brenda to drug use, primarily cocaine and heroin, which she began using in July 1982. In January 1983, Brenda found out she was four months pregnant. Although she knew the drugs could be dangerous to her unborn child she could not stop using them for more than about 10 days. She did not seek prenatal care.

On June 16, 1983, Brenda took drugs before entering the hospital to have her baby. She informed the doctor that she used both cocaine and heroin. Her baby son, Solomon, suffered mild drug withdrawal shortly after birth.

A petition to declare Solomon a dependent of the court (Welf. & Inst. Code, § 300, subd. (a)) was instituted June 22, 1983, and a true finding made July 15, 1983. Solomon was placed in the foster home of Mary and Mateo Asaro two days later.

Two weeks after Solomon's birth, Brenda was incarcerated on a grand theft charge to which she ultimately pleaded guilty. Within the next five

months she was arrested and pleaded guilty to receiving stolen property and first degree burglary. She was sentenced to terms of four years and three years, to be served concurrently. Including some time for an additional federal warrant, Brenda's time of continuous incarceration spanned from November 1983 until April 1985.

Brenda voluntarily returned to California Rehabilitation Center June 8, 1985, and was released August 9, 1985. She had turned herself in to CRC's Narcotics Anonymous program to get help with her drug addiction. Brenda tried many other drug programs as well. She sought help from "Pathways," but quit that program after two visits because her counselor had never used drugs and therefore, she believed, could not help her. She rejected the "Crash" program because it was a residential facility. The "C" Street Methadone Clinic denied her admittance because she had not used drugs long enough. Finally, the outpatient program "MITE" accepted Brenda, but she was soon incarcerated and never returned.

At the time of the freedom from custody and control proceedings, Brenda had been accepted at "KIVA House," a residential facility for incarcerated women with children. However, by the end of the proceedings, this alternative form of punishment was rejected by her sentencing judge and Brenda currently faces three years in prison.

Efforts were ongoing to place Solomon with his paternal aunt and uncle in Ohio. Brenda and Eugene agreed that a guardianship placement would be appropriate for their son. An initial report on the aunt and uncle was favorable and further investigation by the Department of Social Services was planned with regard to adoption.

The court found "by clear and convincing evidence" the allegations of Brenda's neglect (Civ. Code, § 232, subd. (a)(2)) and habitual use of controlled substances (Civ. Code, § 232, subd. (a)(3)) to be true. Neglect was shown by her use of drugs during pregnancy, and the child's withdrawal from drugs after birth and neglect in the early days of the child's life. The court found both parents "hopelessly addicted to drugs" and noted Brenda's inability to free herself from the addiction.

The court further found that returning the child to either parent would be detrimental. (Civ. Code, § 232, subd. (a)(7).) Specifically, the court found that Brenda was given an opportunity to reunite with Solomon and "she flunked the test." She went back to using drugs and failed to follow through with any rehabilitation program provided to her. The court found Brenda unable to provide a home for her child in the reasonably foreseeable future because of her commitment to prison.

The court articulated the key issue it had to address as "whether there was any less drastic alternative to termination of parental rights." The court noted that Eugene should never regain custody of the child because of his total irresponsibility. As to Brenda, the court opined that it would be years before knowing whether she would be able to care for the child. After considering placement with the aunt and uncle as guardians, the court decided that the child's needs would be better served by the permanency of adoptive placement, and therefore terminated each parent's rights of care, custody and control. Brenda appeals the judgment.

### DISCUSSION

■ "Parenting is a fundamental right, and accordingly, is disturbed only in extreme cases of persons acting in a fashion incompatible with parenthood." (*In re Carmaleta B.* (1978) 21 Cal.3d 482, 489 [146 Cal.Rptr. 623, 579 P.2d 514].) ■ The doctrine preferring parental custody was unaffected by the enactment of Civil Code section 4600 (order of custody preference upon separation or dissolution). (*Ibid.*) Rather, the focus was removed from the determination of parental unfitness and placed upon the consideration of detriment to the child. (*Ibid.*, citing *Guardianship of Marino* (1973) 30 Cal.App.3d 952, 958 [106 Cal.Rptr. 655].) ■ The Legislature's concern with the legal termination of parental rights echoes that of custody determination implicitly in providing that pertinent statutes ". . . shall be liberally construed to serve and protect the interests and welfare of the child" (Civ. Code, § 232.5); and, explicitly in section 232, subdivision (b) which states the court "shall act in the best interests of the child."

With the foregoing in mind, we turn now to each of appellant's contentions to determine whether substantial evidence supports the court's findings below.

*The evidence is sufficient to sustain a finding of neglect pursuant to Civil Code section 232, subdivision (a)(2).*

■ Viewing the evidence in a light most favorable to the respondent, the record below is replete with instances of Brenda's neglect. She admits to taking drugs while pregnant, knowing them to be harmful to her unborn child. She admits to current addiction to drugs. Furthermore, Brenda's virtually continuous incarceration has prevented her from keeping scheduled visits with her child. Indeed, she now faces a sentence of three years which will keep her from consistent contact with her son.

■ Brenda was entitled to have her son's dependency order reviewed in light of current events to determine whether the conditions which gave rise

to the neglect still persisted. (*In re Terry E.* (1986) 180 Cal.App.3d 932, 950 [225 Cal.Rptr. 803].) She contends that her recognition of her own problems and her demonstration of concern for Solomon's welfare preclude a finding of current neglectful treatment. The facts indicate, however, that the circumstances of drug abuse and continual incarceration persist for her and constitute sufficient evidence for the court to find her still neglectful of Solomon's needs under Civil Code section 232, subdivision (a)(2).

*The evidence is sufficient to sustain a finding of present disability pursuant to Civil Code section 232, subdivision (a)(3).*

■ The court below characterized Brenda and her husband as "hopelessly addicted to drugs." The record supports that observation.

Brenda admitted the circumstances of drug abuse which led to the initial removal of Solomon from her custody. She also concedes a continued inability to overcome her addiction either on her own, or with the aid of various rehabilitation programs. There was ample solid and credible evidence upon which the court below reasonably rested its decision.[1]

*The evidence was sufficient to sustain a finding that return of the child to appellant would be detrimental to the child pursuant to Civil Code section 232, subdivision (a)(7).*

Brenda's quarrel with the court's determination under section 232, subdivision (a)(7) is twofold. First, she contends the evidence did not show that she was likely to fail to maintain an adequate relationship with her child. Second, she says there was no showing that she had been offered appropriate services to address her problems. We find neither contention meritorious.

■ There was indeed evidence of Brenda's sincere desire to care for her son, as well as her attempts at establishing a mother-child relationship. The court's focus, however, was not solely on the efforts or fitness of the parent, but appropriately, upon the detriment to the child. (*In re Carmaleta B., supra,* 21 Cal.3d at p. 489.) Once again, Brenda's inability to conquer her addiction to drugs and consistent cycle of criminal activity combined to provide substantial evidence that appellant would be unable to maintain an adequate relationship with her child as defined by Civil Code section 232, subdivision (a)(7).

---

[1]Brenda argues that because the court stated her drug usage began "five or six years ago," when in fact it began only three years before trial, its findings under Civil Code section 232, subdivision (a)(3) could not have been based on clear and convincing evidence. The court's misstatement however, pales in significance when compared to the overwhelming evidence of Brenda's past and present drug addiction.

 The court also found that reasonable services had been offered Brenda to aid her in overcoming the problems which led to the deprivation of custody. Evidence demonstrates that Brenda's near-continuous incarceration after Solomon's birth drastically reduced the services available to her. In addition, there is evidence that she and her husband gave false addresses to social workers, making location difficult. Yet, despite her incarceration and unknown whereabouts, services were offered to her, many of which *she* rejected. The "Pathways" program was unsuitable because she felt her counselor could not assist her because the counselor had not personally used drugs. She rejected "Crash" because it was a residential program. She was accepted at the "MITE" program but was soon incarcerated and therefore unable to participate. In sum, there was substantial evidence upon which the court found that requisite services had been offered to her under Civil Code section 232, subdivision (a)(7).

*The trial court did not abuse its discretion in ordering adoptive placement rather than a long-term guardianship.*

 Before deciding on the key issue of whether long-term guardianship was a less drastic alternative to the termination of parental rights and adoption, the court requested written authorities from all counsel to supplement the record. After considering each option, the court decided the child's interests would best be served by the permanency of adoptive placement and, for that reason, terminated the parental rights of Brenda and her husband.

Brenda takes issue with the court's exercise of its discretion from the perspective that guardianship would be a less drastic alternative to the severing of her parental rights. Obviously, *any* alternative short of termination, is less drastic to parental rights. While preservation of Brenda's rights are an important consideration, once again, the focus of the court's inquiry is upon the welfare of the child. (Civ. Code, § 232, subd. (b).)

 There is substantial evidence to support the court's conclusion that adoption under the circumstances of this case is the appropriate choice. The court said: "It's going to be years before we would ever know whether she [Brenda] would be able to have the child. . . . I don't think this child should be placed in a guardianship when wonderful, apparently, adoptive home [with his paternal aunt and uncle] is available and appropriate for this child." "The 'ultimate best interest of the child' must weigh heavily in favor of the trial court's decision not to continue the search for less drastic alternatives." (*In re Raymond H.* (1985) 175 Cal.App.3d 556, 563 [221 Cal.Rptr. 165].) Here the court carefully weighed the alternatives in light of the child's best interests before terminating Brenda's parental rights. The court did not abuse its discretion.

## DISPOSITION

Judgment affirmed.

Kremer, P. J., and Todd, J., concurred.

A petition for a rehearing was denied April 8, 1987, and appellant's petition for review by the Supreme Court was denied June 3, 1987.