905 P.2d 555

**In the Matter of the APPEAL IN PIMA COUNTY JUVENILE SEVERANCE ACTION NO. S–120171.**

**No. 2 CA–JV 94–0049.**

Court of Appeals of Arizona, Division 2, Department B.

June 30, 1995.

Review Granted Nov. 21, 1995.

Review Denied as Improvidently Granted Jan. 26, 1996.*

---

\* Chief Justice Feldman and Chief Judge McGregor dissent from the portion of the order denying

review.

Grant Woods, Atty. Gen. by Edith A. Croxen, Tucson, for the State.

Catherene J. Morton, Tucson, for father.

Robert L. Barrasso, Tucson, for mother.

Law Offices of Paul F. Tosca, Jr. by Paul F. Tosca, Jr., Tucson, for minors.

**OPINION**

DRUKE, Chief Judge.

The Arizona Department of Economic Security (DES) sought to sever the parental rights of both the father and mother of A. and T. on numerous grounds, including chronic abuse of alcohol, dangerous drugs, and controlled substances and out-of-home placement as to each child. The juvenile court granted the severance petition as to the father but dismissed it as to the mother. Both the father and DES have appealed. In this published portion of our decision, we address only DES's contention that the juvenile court erred in finding that the mother's ingestion of alcohol during pregnancy and the father's allowing it could not, as a matter of law, be the basis for severance on the ground of abuse or neglect under A.R.S. § 8–533(B)(2). The remaining issues presented by DES and by the father's appeal are resolved in a contemporaneously filed memorandum decision. We publish only this portion because only this portion meets the standards for publication set forth in Rule 28(b), Ariz.R.Civ.App.P., 17B A.R.S. *See Fenn v. Fenn*, 174 Ariz. 84, 847 P.2d 129 (App.1993).

It is undisputed that A. and T. were harmed by the mother's ingestion of

alcohol during pregnancy. T. suffers from fetal alcohol syndrome; A.'s condition is somewhat less severe but he also suffers some fetal alcohol effects. We agree with the juvenile court, however, that a "child" under the severance statute does not include a fetus. "Child" is defined in § 8–531(3) as "a person less than eighteen years of age." Although the statute does not define "person," we do not believe the legislature intended it to include a fetus for purposes of the severance statute. Consequently, the mother's ingestion of alcohol during pregnancy cannot be the basis for a finding of abuse under § 8–533(B)(2).

The Division One case of *Vo v. Superior Court*, 172 Ariz. 195, 836 P.2d 408 (App.1992), is instructive in our analysis. The issue there was whether "person," defined as "a human being" in A.R.S. § 13–1101(3), included a fetus for purposes of Arizona's first-degree murder statute. In deciding that it did not, Division One noted that the legislature could have more broadly defined "person" to include a fetus as it did when it amended the manslaughter statute. Manslaughter includes "[k]nowingly or recklessly causing the death of an unborn child...." A.R.S. § 13–1103(A)(5). Similarly, the legislature could have broadened the definition of "child" under § 8–531(3) if it had intended to include a fetus.

Division One recently reiterated its conclusion that "person" or "child" does not include unborn children in *Reinesto v. Superior Court*, 182 Ariz. 190, 894 P.2d 733 (App.1995), a case more closely on point. There the court rejected the state's argument that it could prosecute a woman for child abuse under A.R.S. § 13–3623(B)(1) for "prenatal conduct that cause[s] [a child] injury *after* [his or] her birth." *Id.* at 192, 894 P.2d at 735 (emphasis in original). The court reasoned that because "child" is defined under § 13–3623(A) as "an individual who is under eighteen years of age," and because the legislature did not include in that definition an unborn child, it intended to proscribe only "conduct that directly endangers a child, not ... activity that affects a fetus and thereby ultimately harms the resulting child." *Id.*

■ Likewise, we do not believe that the severance statute should be broadly construed to include an unborn child. A parent's right to custody and control of his or her child is fundamental. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Maricopa County Juvenile Action No. JA 33794*, 171 Ariz. 90, 828 P.2d 1231 (App.1991). The courts of this state have held that termination of parental rights should only be considered as a last resort. *Maricopa County Juvenile Action Nos. JS–5209 and JS–4963*, 143 Ariz. 178, 692 P.2d 1027 (App.1984); *Arizona State Department of Economic Security v. Mahoney*, 24 Ariz. App. 534, 540 P.2d 153 (1975). Therefore, we construe the statute strictly, rather than broadly. *Cf. Maricopa County Juvenile Action No. JS–500274*, 167 Ariz. 1, 804 P.2d 730 (1990). A strict construction is consistent with the stated purpose of the Child Welfare and Placement Laws—to "safeguard the rights and interests of all parties concerned...." Ariz.Sess.Laws 1970, ch. 153 § 1.

Contrary to DES's argument, nothing in *Summerfield v. Superior Court*, 144 Ariz. 467, 698 P.2d 712 (1985), requires a different conclusion as to the meaning of "child" or "person." There the supreme court, acknowledging evolving common law in the area of tort recovery, held that "person" within the meaning of Arizona's wrongful death statute includes a viable fetus. Pointing out that such a construction is consistent with one of the purposes of the Wrongful Death Act, to compensate survivors for their loss, the court noted that "the analogy between civil liability for tort and criminal liability for causing death is not apt." *Id.* at 474, 698 P.2d at 719.

■ Seizing on this language, the court in *Vo* refused to apply *Summerfield's* interpretation of the word "person" to the first-degree murder statute. Because of the fundamental nature of parental rights and our determination that strict construction of the statute is required, we too decline to apply *Summerfield* here. Severance proceedings are as distinct from civil tort recovery as are criminal actions. Although it is axiomatic that the severance statute is in part designed

to protect children, its application can result in the termination of parental rights; therefore, the protection of children is not the sole or even the overriding concern. Indeed, this is precisely why the best interest of a child alone cannot be the basis for severance, as the dissent appears to suggest. *See Maricopa County Juvenile Action No. JS–500274,* 167 Ariz. 1, 804 P.2d 730 (1990).

We approve of the reasoning of the Connecticut Supreme Court on this very issue. In *In re Valerie D.,* 223 Conn. 492, 613 A.2d 748 (1992), the court considered whether the use of cocaine throughout pregnancy and just before the onset of labor could be the sole basis for terminating the mother's rights. The court found that the language of the severance statute itself and the involvement of fundamental rights did not permit a broad construction of "child" so as to include a fetus. The court observed that Connecticut's "definition of 'child' as a person 'under sixteen years of age' suggests a limitation on the applicability of that definition to a person who has been born, since that is the ordinary beginning point of one's 'age.'" *Id.* 613 A.2d at 760.

■ We conclude that, while chronic use of drugs or alcohol by either parent during the mother's pregnancy may reflect a pattern of substance abuse and may be so telling of the kind of environment to which the child will be born as to justify the child's immediate removal from the parents at birth, chronic substance abuse during pregnancy in and of itself does not reflect an inability to parent that would justify severance of a parent's fundamental rights. Accordingly, the juvenile court correctly refused to sever either parent's rights on the ground of abuse of the children *in utero.*

ESPINOSA, Presiding Judge, specially concurring.

I concur, but write separately to express some reluctance in doing so given Judge Hathaway's strong dissent and the practical reality of removing these children from a nurturing environment of four years to a potentially abusive one. However, Arizona law does not give judges free rein to consider as paramount the best interests of the child when termination of the parental relationship is at stake. Moreover, while I agree with several points made by the dissent, whether the scope of parental abuse under A.R.S. § 8–533 should include permanent fetal injury is more appropriately addressed by our state legislature than judicially legislated by the courts. It should also be noted that our decision does not foreclose severance proceedings in the future if warranted.

HATHAWAY, Judge, dissenting.

The juvenile court forthrightly and explicitly found it in the children's best interests that parental rights be terminated. That finding discloses:

> The children are residing in a very positive foster home. Both children are bonded to the foster parents and the foster parents are bonded to both children. The foster parents have been able to meet the special needs of these children in an effective way. The foster parents want to adopt these children and it would be in the best interests of the children for them to do so. It is in the best interests of the children that they remain with their foster parents. It is against the children's best interests for them to be placed with their parents. It is in the best interests of the children that their parents' rights be terminated.

I agree with DES's contention that the trial court erred in ruling that the children could not have been abused or neglected by their mother's prenatal use of alcohol or their father's failure to protect. Of importance is whether the abuse occurred and not when. The fact of the abuse and the damage to the children should be the issues.

Abuse requires "the infliction of or allowing physical injury, impairment of bodily function or disfigurement...." A.R.S. § 8–531(2). Of importance is that the impact of the abuse affects a person meeting the definition of a child in A.R.S. § 8–531(4). The timing of the parental misconduct is unimportant in the instant case and is immaterial to the injury inflicted. One requirement that is essential to fulfill the statutory definition of "child" for purposes of parental termination, is, of course, the existence of a child

for whom a termination action is sought. Here, the victim children are living persons, meeting the definition of "child" at the time. the severance action was filed. The appropriate focus of the trial court should be whether the child is suffering from an injury or damage culpably caused or allowed to be caused by the parent.

I disagree with the majority's reliance on two criminal cases, *Vo v. Superior Court,* 172 Ariz. 195, 836 P.2d 408 (App.1992), and *Reinesto v. Superior Court,* 182 Ariz. 190, 894 P.2d 733 (App.1995) (criminal prosecution not permitted for heroin abuse by mother during pregnancy). Rather, I find *Summerfield v. Superior Court,* 144 Ariz. 467, 698 P.2d 712 (1985), more apposite. If a wrongful death action can be brought where a viable infant dies before birth for harm done *in utero,* as held in *Summerfield,* it follows that responsibility for such harm is not eradicated where the child survives. *Cf. Matter of Stefanel Tyesha C.,* 157 A.D.2d 322, 556 N.Y.S.2d 280 (1st Dept.1990) (even a single incident of cocaine usage during infancy can sustain a finding of "actual impairment" to a child if the child is born with positive toxicology for cocaine); *In re Solomon L.,* 190 Cal.App.3d 1106, 236 Cal.Rptr. 2 (1987) (use of drugs during pregnancy was neglect for purpose of termination action); *In re Ruiz,* 27 Ohio Misc.2d 31, 27 OBR 350, 500 N.E.2d 935 (Com.Pl.1986) (the protection of an unborn child's interest in life is bestowed at viability and injury to the fetus after that point is abuse); *Matter of Baby X,* 97 Mich.App. 111, 293 N.W.2d 736 (1980) (child has a legal right to begin life with a sound mind and body). I believe the trial court erred in discounting the children's injuries knowingly inflicted by the parents during pregnancy and in not giving weight to the best interests of the children who, at the time of the court's ruling, had been in their foster placements, one for 41 months and the other for more than 2½ years. The record shows that enough experimentation has occurred with the biological parents; the children should not be exposed to further experimental risk and are entitled to the stability of their current home, which the trial court specifically found would be in their best interests.

It is further worthy of note that in the 1994 amendment to A.R.S. § 8-533(B), in the introductory paragraph to the grounds for severance, the legislature changed the phrase "the court **may** also consider the **needs** of the child" (emphasis added) to "the court **shall** also consider the **best interests** of the child." (emphasis added) I believe that neither the trial court nor this court have factored into the decision-making equation the best interests of the children. When that is done, taking into account the pathetic long-term history of the parents, I believe termination of parental rights is strongly indicated.