113 P.3d 1240

**STEVEN K., Appellant,**

v.

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, Aimee K., and Steven K. Jr., Appellees.**

No. 1 CA–JV 04–0145.

Court of Appeals of Arizona, Division 1, Department D.

June 23, 2005.

Terry Goddard, Attorney General, By Stacy L. Shuman, Assistant Attorney General, Phoenix, Attorneys for Appellee/Arizona Department of Economic Security.

Emily Danies, Tucson, Attorney for Appellant.

## OPINION

HALL, Judge.

¶1 Steven K. (Father), the natural father of Aimee K. and Steven K., Jr., appeals from the juvenile court's order terminating his parental rights pursuant to Arizona Revised Statutes (A.R.S.) sections 8–533(B)(3) (chronic abuse of dangerous drugs) and (B)(8)(a) (nine month out-of-home placement) (Supp. 2004). Based on the record in this case, we conclude that the Arizona Department of Economic Security (ADES) failed to prove by clear and convincing evidence that Father would be unable to discharge his parental duties "for a prolonged indeterminate period" (§ 8–533(B)(3)) or that he substantially neglected or willfully refused to remedy the circumstances causing the children's out-of-home placement (§ 8–533(B)(8)(a)). Therefore, we vacate the order of termination and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2 On February 19, 2003, nine-month-old Aimee was released from Yavapai Regional Medical Center after being hospitalized for pneumonia, hypoxia, and a urinary tract infection. Two days later, Father and Rosamund G. (Mother), the natural mother of Aimee and her twin brother Steven (the children), were arrested for use and possession of methamphetamine and possession of drug paraphernalia. Child Protective Services (CPS) conducted an investigation of the family based on an allegation of medical neglect and took temporary custody of the children because there was "no care provider in the home[.]"

¶3 Shortly thereafter, ADES filed a dependency petition alleging the children were dependent as to Father and Mother within the provisions of A.R.S. § 8–201(13) (Supp. 2004). Father submitted the dependency on the record, and the juvenile court found the children dependent as to both parents.

¶4 Following the juvenile court's dependency ruling, Mother was released from jail and placed in a halfway house to facilitate her drug rehabilitation. Father, on the other hand, remained incarcerated, and was sentenced on June 9, 2003 to two concurrent one and one-half year terms of imprisonment. With no available caregiver in the home, the children were placed with their paternal grandparents as authorized by the juvenile court. However, after approximately four months, the grandparents informed CPS that they were unable to continue caring for the children, and the children were placed in an ADES-licensed foster home in August 2003.

¶5 On January 20, 2004, ADES filed a motion seeking termination of Father's parental rights to the children, alleging two statutory bases: (1) that the children had been in an out-of-home placement pursuant to a court order for a cumulative period of nine months or longer and Father had substantially neglected or willfully refused to remedy the circumstances causing the out-of-home placement, and (2) that Father was unable to discharge his parental responsibilities because of a history of chronic abuse of dangerous drugs and there were reasonable grounds to believe that the condition would continue for a prolonged indeterminate period.[1] ADES also requested that the juvenile court order Father to submit to a psychological evaluation, and the court did so.

¶6 Upon receiving a copy of the motion for termination, Father wrote a letter to the juvenile court, stating:

I have been incarcerated for the length of my case. I have been doing whatever I can while incarcerated. I've been at the Marana Correctional Treatment Facility for nine months and attending counseling groups the whole time. I also have acquired my G.E.D. [General Educational Development Certificate] while in county jail. I've taken job skills classes, life skills classes and a parenting class. I have enclosed copies of my certificates with this letter.

I know I can accomplish much more upon release. I hope you will please grant me

1. In its motion, ADES also petitioned for termination of Mother's parental rights. Mother voluntarily relinquished her rights to the children and consented to their adoption. However, she requested that the juvenile court not order severance until it made a determination regarding severance as to Father. Mother's parental rights were severed on July 9, 2004.

the chance to prove myself. My kids mean the world to me and I will do whatever is needed o[n] my part to get them back.[2]

¶ 7 Father was released from prison on June 1, 2004. The juvenile court denied Father's motion to continue the trial and held the contested severance hearing three days later. At the hearing, John Philip DiBacco, Ph.D., testified regarding the psychological evaluation of Father he conducted at the request of CPS while Father was incarcerated. Dr. DiBacco diagnosed Father as suffering from amphetamine abuse in remission, and also testified that Father demonstrated some "borderline features" of antisocial behavior, but stated that there were insufficient indicators to make that diagnosis. Additionally, Dr. DiBacco noted that, to Father's "credit," Father readily admitted his drug problem and he voluntarily participated in a drug-treatment program in prison, and "the record indicated that there were no incidences of him using any drugs in prison." Acknowledging that Father was highly motivated to continue sobriety outside prison, Dr. DiBacco testified that Father's prognosis was "fair," but opined that he would need to demonstrate a year of sobriety outside of prison to establish he was in recovery and recommended that the children not be returned to Father until that time.

¶ 8 Father also testified at the severance hearing, explaining that he requested to be placed at the Marana Correctional Facility because it offered a drug-treatment program, and identified the numerous other programs and services he participated in while incarcerated. Father also testified that he was

willing to participate in any other services or programs CPS might require of him. When questioned about his conduct while incarcerated, Father testified that he remained sober during the entire length of his incarceration and that he was never subject to any disciplinary action.

¶ 9 Finally, the CPS caseworker, Lacie Moore, testified. Moore stated that both children were adoptable and thriving in their adoptive placement. When questioned about Father's efforts to gain custody of his children, Moore admitted that Father had complied with everything CPS had asked of him and that he had participated in every service available to him in prison. Nonetheless, Moore testified that in her opinion Father had substantially neglected to remedy the circumstances that caused the children to be out of his care.

¶ 10 At the close of the termination hearing, the juvenile court took the matter under advisement, stating:

I believe you're sincere in wanting to be back in your children's lives.

I believe that you have taken the steps that were available to you to try to make changes in your life. . . . I am required to consider what is in the children's best interest first.

Soon thereafter, the juvenile court granted ADES' motion to terminate Father's parental rights, finding that severance was justified pursuant to both §§ 8–533(B)(3) and (B)(8)(a), and that severance was in the children's best interests.[3]

2. The Foster Care Review Board's findings supported Father's claims. Specifically, the Board found Father: (1) participated in counseling services while incarcerated, (2) obtained his G.E.D., (3) participated in parenting, job and life-skills classes, (4) wanted his children back, (5) made efforts to better himself, (6) had a job awaiting him upon his release from prison, (7) had been sober for a year since being incarcerated, (8) loved the children very much, and (9) would do whatever was required to have the children returned to his care. Nonetheless, the Board determined that progress was not "being made toward removing the causes necessitating the out of home placement."

3. In the relevant portion of its minute entry ruling, which was later reduced to a signed judgment, the court stated:

[Father] was in prison throughout the pendency of the case. While in prison he participated in drug treatment at the Marana treatment facility for 11 months, he took parenting classes and got his GED. He was released to a halfway house and is willing to continue to participate in treatment.

Dr. DiBacco testified that [Father] suffers from amphetamine abuse, in remission because of his confinement in prison. His testing showed drug ideation and a probability of future substance abuse. [Father] has a chronic history of substance abuse, and it is Dr. DiBacco's opinion that [Father] is not able to parent at this time. He would want to see a year of sobriety before [Father] could have custody of a child. DiBacco acknowledged that [Father] did drug treatment in prison but opines that he

¶ 11 Father timely appealed. We have jurisdiction pursuant to A.R.S. § 8–235(A) (Supp.2003) and Arizona Rules of Procedure for the Juvenile Court 88(A).

## DISCUSSION

■ ¶ 12 The severance of a parent's right to custody and control of his children is a severe action impacting the parent's fundamental constitutional interests. *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶ 11, 995 P.2d 682, 684 (2000). "[T]his fundamental right 'does not evaporate simply because' the natural parents 'have not been model parents or have lost temporary custody of their child to the state.'" *Matter of Appeal in Maricopa County Juv. Action No. JS–500274*, 167 Ariz. 1, 4, 804 P.2d 730, 733 (1990) (quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). Accordingly, such action should only be taken as a last resort. *Matter of Appeal in Pima County Juv. Severance Action No. S–120171*, 183 Ariz. 546, 548, 905 P.2d 555, 557 (App.1995); *see also Matter of Maricopa County, Juv. Action No. JA 33794*, 171 Ariz. 90, 91–92, 828 P.2d 1231, 1232–33 (App.1991) ("The combined effect of the fundamental character of a parent's right to his child and the severity and permanence of termination dictates that the court sever the parent-child relationship only in the most extraordinary circumstances, when all other efforts to preserve the relationship have failed."). These requirements are embodied in the statutory grounds for termination set forth in A.R.S. § 8–533, pursuant to which the juvenile court must ensure that a termination order is supported by clear and convincing evidence es-

tablishing a statutory basis for severance and that a preponderance of the evidence shows that termination is in the best interests of the child. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22, 110 P.3d 1013, 1018 (2005).

■ ¶ 13 Because the juvenile court as the trier of fact is in the best position to weigh the evidence, we defer to the juvenile court's findings and do not reweigh the evidence. We reverse a severance of parental rights based on the insufficiency of the evidence only if the order is clearly erroneous. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4, 53 P.3d 203, 205 (App. 2002). Under this standard of review, we will not disturb the juvenile court's decision if there is reasonable evidence to support the termination of parental rights. *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2, 982 P.2d 1290, 1291 (App.1998). However, we review de novo legal issues requiring the interpretation and application of § 8–533. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 9, 83 P.3d 43, 47 (App.2004).

¶ 14 We are presented with two issues on appeal: (1) whether sufficient evidence supports the juvenile court's determination that Father substantially neglected or willfully refused to remedy the circumstances causing the out-of-home placement, and (2) whether sufficient evidence supports the juvenile court's finding that there are reasonable grounds to believe that Father's chronic abuse of dangerous drugs will continue for a prolonged indeterminate period. We address each of these issues in turn.

### I.

■ ¶ 15 Father contends the juvenile court erred in finding by clear and convinc-

---

needs [a] relapse program, UA's, and individual therapy and needs to engage in treatment for a year.

. . . .

The court acknowledges that [Father] has been doing well since his release from prison and that he sincerely wants another chance to parent his children. However[,] the court also recognizes that [Father] has a chronic substance abuse problem and that it will be at least another year before reunification would be possible, no matter how well he does.

Based on the matters presented the Court finds that [ ] [Father is] unable to discharge [his] parental responsibilities and that the inability is the result of a history of chronic abuse

of dangerous drugs, controlled substances or alcohol and that there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period. The court finds that the children have been in an out of home placement for an indeterminate period. The Court finds that the children have been in an out of home placement for in excess of 9 months and that [Father] has substantially neglected or willfully refused to remedy the circumstances which caused the children to be in an out of home placement and there is substantial likelihood that [Father] will [not] be capable of exercising proper and effective parental control in the near future.

ing evidence that he substantially neglected or willfully refused to remedy the circumstances causing the children's out-of-home placement. As support for his argument, Father notes that he availed himself of all the services and programs afforded him while incarcerated.

¶ 16 Section 8–533(B)(8) provides that evidence sufficient to justify the termination of the parent-child relationship includes:

> That the child is being cared for in an out-of-home placement under the supervision of the juvenile court, the division or a licensed child welfare agency, that the agency responsible for the care of the child has made a diligent effort to provide appropriate reunification services and that either of the following circumstances exists:
>
> (a) The child has been in an out-of-home placement for a cumulative total period of nine months or longer pursuant to court order ... and the parent has substantially neglected or wilfully refused to remedy the circumstances which cause the child to be in an out-of-home placement.
>
> (b) The child has been in an out-of-home placement for a cumulative total period of fifteen months or longer pursuant to court order ..., the parent has been unable to remedy the circumstances which cause the child to be in an out-of-home placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future.

Thus, the criteria required to justify termination of parental rights pursuant to § 8–533(B)(8) vary depending on the length of time the child is in an out-of-home placement. *Matter of Appeal in Maricopa County Juv. Action No. JS–6520*, 157 Ariz. 238, 243, 756 P.2d 335, 340 (App.1988). The legislature has determined that for the child in an out-of-home placement for the shorter nine-month period, the standard of parental misconduct is high: substantial neglect or willful refusal to remedy the situation. For the longer fifteen-month period, the standard is lessened: an inability to remedy the situation. *Id.* This difference is significant here

because, under § 8–533(B)(8)(a), "parents who make appreciable, good faith efforts to comply with remedial programs outlined by ADES will not be found to have substantially neglected to remedy the circumstances that caused the out-of-home placement, even if they cannot completely overcome their difficulties[.]" *Matter of Appeal in Maricopa County Juv. Action No. JS–501568*, 177 Ariz. 571, 576, 869 P.2d 1224, 1229 (App.1994). On the other hand, when parents make only "sporadic, aborted attempts to remedy" the circumstances causing the out-of-home placement, the juvenile "court is well within its discretion in finding substantial neglect and terminating parental rights on that basis." *Id.* "Thus, compliance under [§ 8–533(B)(8)(a)] sufficient to avoid severance requires, at a minimum, something more than trivial or de minimus efforts at remediation." *Id.* at 576 n. 1, 869 P.2d at 1229 n. 1.

¶ 17 The record does not support the juvenile court's finding that Father substantially neglected or willfully refused to remedy the circumstances causing the out-of-home placement. Instead, the record reflects that Father, to the extent possible given his incarceration at the time, participated in counseling, parenting, job, and life-skill services, obtained his G.E.D., maintained sobriety for a year, and made efforts to better himself. At the termination hearing, the CPS caseworker admitted that Father had complied with everything CPS had asked of him and that he had participated in every service available. Similarly, the juvenile court noted that Father had "taken the steps that were available to [him] to try to make changes in [his] life." Thus, the record demonstrates that even though he has not yet "completely" overcome his difficulties, Father has made an "appreciable, good faith effort to comply with remedial programs." *See Maricopa County Juv. Action No. JS–501568*, 177 Ariz. at 576, 869 P.2d at 1229. Therefore, the juvenile court's finding that Father "substantially neglected or willfully refused to remedy the circumstances" causing the out-of-home placement is clearly erroneous. Accordingly, the severance of Father's parental rights pursuant to § 8–533(B)(8)(a) cannot be upheld.

## II.

¶ 18 Father also argues that the juvenile court erred in terminating his parental rights pursuant to § 8–533(B)(3) on the basis that reasonable grounds existed to believe his chronic abuse of dangerous drugs would continue for a prolonged indeterminate period. Specifically, Father notes that he voluntarily participated in a substance abuse program while in prison and that he remained sober the entire length of his incarceration.[4] Additionally, Father cites Dr. DiBacco's hearing testimony that a year of sobriety, as a general "rule," is sufficient to permit the return of a child to a former substance-abusing parent.

¶ 19 Section 8–533(B)(3) provides, in pertinent part:

Evidence sufficient to justify the termination of the parent-child relationship shall include any one of the following . . . :

. . . .

3. That the parent is unable to discharge the parental responsibilities because of mental illness, mental deficiency or a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period.

¶ 20 The parties do not dispute, and the record clearly reflects, that Father has a history of chronic drug abuse that rendered him unable to discharge his parental responsibilities at the time of the termination hearing. The issue is whether the evidence established the remaining statutory requirement that reasonable grounds existed "to believe that the condition will continue for a prolonged indeterminate period."

¶ 21 Although the requirement that the condition will continue for a "prolonged indeterminate period" has existed in Arizona's parental-rights termination statute since its inception, *see* 1970 Ariz. Sess. Laws, ch. 153, § 2, the term has never been defined by statute, nor has it been specifically interpreted by case law.[5] When construing a statute, we first look to the statutory language, which, if plain and unambiguous, we apply without resorting to other rules of construction. *Ariz. Dep't of Econ. Sec. v. Superior Court,* 186 Ariz. 405, 408, 923 P.2d 871, 874 (App.1996). When the legislature has not ascribed a particular meaning to a term, we commonly look to dictionary definitions. *State v. Wise,* 137 Ariz. 468, 470 n. 3, 671 P.2d 909, 911 n. 3 (1983).

¶ 22 In this instance, dictionary definitions do not substantially assist us in ferreting out the meaning of the statutory language because the words used are inherently imprecise. "Prolong," for example, means to "lengthen in duration; protract," The American Heritage Dictionary of the English Language 1449 (3rd ed.1992), or to "lengthen in scope or extent," Webster's II New College Dictionary 885 (1995). The term "indeterminate" is defined variously as: 1. not precisely determined, 2. not precisely fixed, as to extent, size, nature, or number, 3. lacking clarity or precision, as in meaning; vague, 4. not fixed or known in advance, 5. not leading up to a definite result or ending, The American Heritage Dictionary of the English Language at 917–18, and incapable of being determined, Webster's II New College Dictionary at 563.

¶ 23 From these definitions, the most that can be said from examining the statutory language is that a "prolonged indeterminate period" is one that is lengthy but whose exact duration is unknown. *See Matter of Appeal in Maricopa County Juv. Action No. JS–5209 and No. JS–4963,* 143 Ariz. 178, 184, 692 P.2d 1027, 1033 (App.1984) (referring to a "prolonged indeterminate period" as one that is for "an extended and indefinite period of time"). Therefore, to further elucidate legislative intent, we rely on the following statement of purpose adopted by the legislature when it amended § 8–533 in 1986:

The purpose of this act is to expedite the adoption of numerous children who remain

---

4. Both Father and Dr. DiBacco testified that illicit drugs are available in prison.

5. As originally enacted, the condition was limited to "mental illness or mental deficiency." 1970 Ariz. Sess. Laws, ch. 153, § 2. The language regarding chronic abuse of drugs was later added. *See* 1979 Ariz. Sess. Laws, ch. 86, § 1.

in temporary foster care for indeterminate lengths of time *with no hope of being returned to their natural parents* and, in so doing, promote a stable and long-term family environment for these children.

1986 Ariz. Sess. Law, ch. 205, § 1 (emphasis added). *See State v. Thomason,* 162 Ariz. 363, 366, 783 P.2d 809, 812 (App.1989) ("Statutes should be read in the light of their purpose, and should not be construed without regard to their aim."). From this statement, we infer that by its use of the word "prolonged" the legislature meant to hasten the adoption process for children in foster care for whom there was no realistic probability of being returned to a natural parent in the foreseeable future.

¶ 24 In this case, by the time of the termination hearing, Father had maintained sobriety for approximately a year while incarcerated. Although he had participated in numerous programs and was highly motivated to continue sobriety, Dr. DiBacco concluded that Father was nonetheless unfit to parent the children until he had achieved one year of sobriety outside the prison setting, an outcome for which the doctor believed Father had a "fair," although not a "good," prognosis. Hence, the evidence presented to the juvenile court was that Father had thus far done everything he conceivably could have done to rehabilitate himself since the removal of the children and his incarceration, but needed an additional year of sobriety before the children could appropriately be returned to his care. Under the circumstances of this case, in which the children had been in foster care for approximately nine months, an additional one-year period of time for Father to demonstrate his commitment to a drug-free lifestyle, and assuming his ongoing cooperation with ADES, would not have been a "prolonged indeterminate period" under the statute. *See Mary Ellen C. v. Ariz. Dep't. of Econ. Sec.,* 193 Ariz. 185, 191, ¶ 31, 971 P.2d 1046, 1052 (App.1999) (condition that renders parent who suffers from mental illness unable to discharge parental responsibilities must "be proven not to be amenable to rehabilitative services that could restore [the parent's] ability to care for a child within a reasonable time").

## CONCLUSION

¶ 25 The undisputed evidence at the severance hearing was that Father had participated in every service available to him and had maintained a drug-free lifestyle while in prison and was committed to doing so in the future. The psychologist who evaluated Father at the request of CPS testified that there was a "fair" chance that Father would be able to maintain sobriety for one year, at which time consideration could be given to returning the children to his care. Under these circumstances, insufficient evidence exists to justify severance on either ground urged by ADES. Although the evidence does reflect that the children are thriving in their adoptive placement, "the law does not permit severance to be predicated solely on the best interests of the child." *Mary Ellen C.,* 193 Ariz. at 194, ¶ 43, 971 P.2d at 1055. Therefore, we vacate the juvenile court's severance order and remand this matter for further proceedings consistent with this opinion.

CONCURRING: DONN KESSLER, Presiding Judge, and LAWRENCE F. WINTHROP, Judge.

