182 N.J. Super. 278 (1981)
440 A.2d 1144
STATE OF NEW JERSEY IN THE INTEREST OF A.W.S., JUVENILE-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 17, 1981.
Decided December 17, 1981.
*279 Before Judges MICHELS, McELROY and J.H. COLEMAN.
Christine F. Kirkpatrick, Assistant Bergen County Prosecutor, argued the cause for appellant (Roger W. Breslin, Jr., Bergen County Prosecutor, attorney; Christine F. Kirkpatrick of counsel and on the brief).
Seymour Chase argued the cause for respondent (Chase & Chase, attorneys; Bruce Evan Chase of counsel and on the letter brief).
PER CURIAM.
The judgment of the Bergen County Juvenile and Domestic Relations Court dismissing the complaint charging the juvenile A.W.S. with criminal homicide for causing death by auto, in violation of the provisions of N.J.S.A. 2C:11-2 and N.J.S.A. 2C:11-5, is affirmed substantially for the reasons expressed by Judge Polito in his opinion reported in State in the Interest of A.W.S., 182 N.J. Super. 334 (J. & D.R.Ct. 1980). The holding by the trial court that an unborn fetus is not a "human being" within the meaning of the criminal homicide provisions of the New Jersey Code of Criminal Justice is in accord with the overwhelming weight of authority throughout this country. See, e.g., Keeler v. Superior Court of Amador Cty., 2 Cal.3d 619, 87 Cal. Rptr. 481, 470 P.2d 617 (Sup.Ct. 1970); People v. Greer, 79 *280 Ill.2d 103, 37 Ill.Dec. 313, 402 N.E.2d 203 (Sup.Ct. 1980); People v. Gutherie, 97 Mich. App. 226, 293 N.W.2d 775 (Ct.App. 1980); State v. Dickinson, 28 Ohio St.2d 65, 275 N.E.2d 599 (Sup.Ct. 1971). See also, Annotation "Homicide Based on Killing of Unborn Child, 40 A.L.R.3d 444 (1971).
Moreover, we are satisfied that the legislative history of the criminal homicide provisions of the Code of Criminal Justice, L. 1978, c. 95, § 2C:1-1 et seq., is persuasive evidence that the trial judge properly construed the term "human being" set forth in N.J.S.A. 2C:11-2. In the Final Report of the New Jersey Criminal Law Revision Commission (1971), which was submitted for consideration to our Legislature, the criminal homicide provisions contained a definition of the term "human being." N.J.S.A. 2C:11-1(a) of the proposed draft defined "human being" as "a person who has been born and is alive." The commentary to this section of the proposed draft noted that:
The definition of "human being" set forth adopts the common-law definition which has been the law of New Jersey and which excludes the killing of a fetus from homicide. See In Re Vince, 2 N.J. 443, 450 (1949); State v. Cooper, 22 N.J.L. 52 (Sup.Ct. 1849); State v. Murphy, 27 N.J.L. 112, 114 (Sup.Ct. 1858). An earlier draft of our Code would have included as human beings a person "who is alive and includes a viable fetus." This would have included as homicides situation such as that set forth in Keeler v. Superior Court, [2] Cal.2d [3d 619], [87] Cal. Rptr. [481, 470 P.2d 617] (Sup.Ct. June 12, 1970) reversing 80 Cal. Rptr. 865 (Ct.App. 1969) where a viable fetus was purposely stomped from its mother by the defendant. California, following the common law rule, held this not to be homicide as to the fetus. Change, if appropriate, was thought to be for the Legislature. We do not recommend the change because of (1) the problems in determining viability, (2) the problems in distinguishing abortions which should not be treated as homicides and, (3) while purposeful killings of viable fetuses perhaps should be homicide, reckless and negligent killings probably should not. The feeling of terror raised in the community is not present where the victim of a homicide is a fetus. Conviction of a defendant as in the Keeler situation of aggravated assault, which under our Code would be a crime of the second degree, seems sufficient. [Id., vol. II: Commentary at 150]
The definition of "human being" contained in the proposed draft, however, was deleted from the version of the Code which was eventually adopted and enacted into law. See N.J.S.A. 2C:11-1. The proposed draft provisions of N.J.S.A. 2C:11-1(a) and the commentary with respect thereto make it eminently *281 clear that our Legislature was cognizant of the status of the case law of this State which has excluded fetuses not born alive from the scope of the prior criminal homicide statutes, and that any change in that law should be effectuated by legislative action. It seems plain, therefore, that at the very least the issue of whether unborn fetuses should be protected or not was considered and rejected when the Code was enacted in its final form.
Finally, we point out that it may well be that the present state of medical knowledge has advanced to the point where it could be established that the fetus in this case was a viable child who could live separate and apart from his mother, so that emergence from the mother's body should no longer be the determinative factor in classifying the fetus as a human being for purposes of criminal homicide. It is not, however, within our province to judicially legislate on this issue, particularly in view of the fact that it recently has been considered and rejected by our Legislature. In this regard, the method by which the Michigan Court of Appeals disposed of this issue in People v. Gutherie, supra, is worthy of being repeated here:
This panel agrees that the "born alive" rule is outmoded, archaic and no longer serves a useful purpose. Modern medical practice has advanced to the point that, unlike the situation when the rule was first developed, the vast majority of viable fetuses will, in the absence of some unexpected event, be born alive and healthy. Further, medical technology can now accurately determine the stages of fetal development and viability. This being so, birth itself in terms of emergence from the mother's body should no longer be held determinative. We further acknowledge that for purposes of actions in tort for wrongful death, recovery may be had even if a viable fetus was yet unborn.
But our concession in these respects does not lead us to conclude that it is within the province of this Court to reverse the trial court. It is one thing to mold, change and even reverse established principles of common law in civil matters. It is quite another thing to do so in regard to criminal statutes. As long ago as 1886 the Supreme Court stated that "[w]hatever elasticity there may be in civil matters, it is a safe and necessary rule that criminal law should not be tampered with except by legislation." In the Matter of Lamphere, 61 Mich. 105, 108, 27 N.W. 882 (1886). Almost 100 years later this Court reaffirmed the same rule of construction saying:
"Criminal statutes, in contrast with the common law, may not be expanded to meet new problems beyond the contemplation of the Legislature when the *282 statute was enacted." People v. Adams, 34 Mich. App. 546, 573, 192 N.W.2d 19 (1971), aff'd in part 389 Mich. 222, 205 N.W.2d 415 (1973).
See also People v. Gilbert, 88 Mich. App. 764, 768, 279 N.W.2d 546 (1979).
When the Legislature enacted the negligent homicide statue [sic] in 1921 and reenacted it in 1931, the "born alive" rule was a well understood and accepted rule of law. At that time and in subsequent years, the Legislature had the opportunity to include unborn fetuses in the statute, but did not do so. The Legislature has, however, enacted the Assaultive Abortion and Manslaughter Abortion statutes cited earlier in this opinion. Both statutes specifically refer to fetal deaths. The fact that the Legislature would refer to a fetus in two statutes but not in the negligent homicide statute is strongly persuasive that the Legislature did not intend that a viable fetus is a "person" within the meaning of that term in the statute.
....
For the foregoing reasons, the trial court's order dismissing the charge of negligent homicide against defendant must be affirmed. Although we find that the "born alive" rule is archaic and should be abolished in prosecutions brought under the negligent homicide statute, the abolition of the rule is a matter for action by the Legislature. For this Court to interpret the statute to include unborn viable fetuses as persons would usurp the Legislature's traditional power of defining what acts shall be criminal and would be contrary to the decisions from other jurisdictions cited herein. Respectfully, we urge the Legislature to make the necessary amendments to the statute. [293 N.W.2d at 778, 780-781; footnotes omitted]
Affirmed.