OPINION OF THE COURT
Luke M. Charde, Jr., J.
Defendant’s omnibus, pretrial motion, dated August 20, 1985, is determined as follows:
1. Request for Dismissal of Counts 9, 10 and 11 of the Indictment.
Defendant is charged with multiple counts of criminally negligent homicide and vehicular manslaughter, among other charges, for conduct alleged to have caused the death of Donna Nehme, and the subsequent stillbirth of her child. Counts 9, 10 and 11 charge the defendant with these offenses due to the "death” of a victim identified in the indictment as "The Stillborn Nehme.” The defendant moves for the dismissal of counts 9, 10 and 11, asserting that the "death” of an unborn child cannot support a prosecution for the offenses charged.
The defendant argues that Penal Law § 125.10, criminally negligent homicide, and Penal Law § 125.12, vehicular manslaughter, both require proof of the death of a person, and that Penal Law § 125.05 (1) defines a person as "a human being who has been born and is alive.” It is axiomatic that for the People to prove the commission of a crime, they must be *378 able to prove each and every element of the offense as set forth in the Penal Law. The People concede that the alleged victim of the offenses charged in counts 9,10 and 11 was not a "person” so defined. The People, however, point to section 125.00, which section defines a homicide as: "conduct which causes the death of a person or an unborn child with which a female has been pregnant for more than twenty-four weeks under circumstances constituting murder, manslaughter in the first degree, manslaughter in the second degree, criminally negligent homicide, abortion in the first degree or self-abortion in the first degree.” The People contend that, the specific definitions of the various offenses notwithstanding, this definition of homicide effectively includes "an unborn child with which a female has been pregnant for more than twenty-four weeks” within the purview of the specific offenses set forth in the Penal Law under the heading of homicide. The People cite no authority for this position and the case appears to present a matter of first impression.
At common law, a person could not be convicted of homicide for the death of a child as a result of prenatal injuries unless the child was first born alive. An extensive review of the common-law requirement was provided by the Supreme Court of the State of California in Keeler v Superior Ct. (2 Cal 3d 619, 470 P2d 617), a decision which has been cited with favor in other superior court cases involving vehicular homicide (State v Dickinson, 28 Ohio St 2d 65, 275 NE2d 599; People v Guthrie, 97 Mich App 226, 293 NW2d 775; State ex rel. Atkinson v Wilson, — W Va —, 332 SE2d 807 [1984]). In each of these cases, the court rejected an attempt to prosecute as homicide the death of an unborn child under a statute embodying the common-law rule. In each case the court insisted upon the need for clear legislative guidance before the abrogation of such a long-standing rule. Indeed, in the wake of the Keeler decision, the California Legislature did effect such a change by statute (People v Carlson, 37 Cal App 3d 349, 112 Cal Rptr 321).
The law of the State of New York requires that in every case other than illegal abortion, the victim of a homicide be a "person” and provides the statutory definition of person set forth above. This is the same definition which obtained at common law, and this court agrees with the opinions cited above that only a clearly legislative pronouncement will support a different interpretation. In seeking such a pronouncement, the People wrongly rely upon section 125.00, which *379 provides a definition of the entire class of offenses designated homicides, and which by virtue of the inclusion of abortion in the list of offenses must necessarily include an unborn child in the list of victims. A review of the legislative history of this section admits to no larger significance.
In 1965, the Penal Law of the State of New York was completely revised. The homicide law in effect at that time, which can be traced to an 1869 enactment, provided that "[t]he wilful killing of an unborn quick child, by any injury committed upon the * * * mother of such child, is manslaughter in the first degree” (Penal Law former § 1050 [2]). This law was itself a departure from the common law, although it availed itself of the common-law term "quick.” The question of just when a child was "quick” was almost immediately a source of litigation (Evans v People, 49 NY 86). However, in the century which followed this enactment before the 1965 revisions, this court can find no case in which the statute was used to prosecute a homicide other than an illegal abortion. Indeed, in the 1949 case of People v Hayner (300 NY 171), a homicide prosecution involving the gruesome killing of a child as it was being delivered, one finds the Court of Appeals insisting upon proof that the child had been "born” within the common-law definition of "wholly expelled from its mother’s body and possessed or was capable of an existence by means of a circulation independent of her own” (p 174, citing Evans v People, supra; 2 Bishop, Criminal Law, at 478 [9th ed]; Sir James Stephen, Digest of Criminal Law, at 218 [7th ed]; 9 Halisbury’s Laws of England, at 571 [1st ed]).
While the 1965 revision attempted to clarify the codification of these common-law principles, this court can find no evidence that the revision was intended to alter them. The 1965 revision consolidated several scattered references to abortion into more concise provisions entirely within the homicide article, and included abortion in an introductory definition of homicide similar to that upon which the People now rely. The section provided that the term "homicide” would include abortion in the first degree, and defined the class of victims of homicide as including "an unborn child with which a female has been pregnant for more than twenty-four [24] weeks” (Penal Law § 125.00). This definition was necessary because the same article provided the offense of abortion in the second degree, which prohibited abortions at an earlier point in the term, but which was not to be considered a homicide. Following section 125.00 in both the 1965 enactment and in the law *380 in its current form are the specific definitions for the various homicide offenses, and in every case other than abortion, the statutes required, as they do now, that the victim be a person within the common-law appreciation of the term. The commentators note that the section 125.05 definition of person was included to insure that the death of a "person” would not include abortional killing of an unborn child (People v Ebasco Servs., 77 Misc 2d 784 [1974], citing Denzer & McQuillan, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 125.05, p 223). It is equally clear to this court that the Legislature did not intend to make the nonabortional killing of an unborn child a homicide.
As originally enacted, section 125.00’s definition of homicide had some additional operative significance in the Penal Law. Today, that significance appears limited to the geographical jurisdiction limitations of CPL article 20 and to the Public Health Law’s provisions regarding autopsies. The Legislature might consider the repeal of a "definition” which in the present code of laws serves little purpose, and which in the instant case has given rise to legitimate confusion. It is certainly within the exclusive province of the Legislature to provide a criminal sanction for the nonabortional killing of an unborn child, and it is the opinion of this court that the Legislature has not so provided. The Legislature had the opportunity to do so in its lengthy deliberations concerning the proposed Penal Law and the several reports of the drafting commission (see, Proposed Penal Law § 1340 et seq.; Senate Introductory Bill No. 3918, Pr. No. 4690, Assembly Introductory Bill No. 5376, Pr. No. 6187, NY State Legislature, 187th Session [1964]). However, neither the law enacted in 1965 nor the 20 years of subsequent legislative and judicial action demonstrate a desire to abrogate a 500-year-old principle of common law.
The court must dismiss counts 9, 10 and 11 of the indictment, dealing with the stillbirth of the Nehme child.