836 P.2d 408

**Nghia Hugh VO and Richard Paredez, Petitioners,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable David R. Cole, a judge thereof, Respondent Judge,**

**The STATE of Arizona, ex rel., Richard ROMLEY, Maricopa County Attorney, Real Party in Interest.**

No. 1 CA–SA 91–327.

Court of Appeals of Arizona, Division 1, Department B.

Jan. 30, 1992.

Review Denied Sept. 22, 1992.

Philip A. Seplow and Morton Rivkind, Phoenix, for petitioner Vo.

Humberto Rosales, Phoenix, for petitioner Paredez.

Richard Romley, Maricopa County Atty. by Alfred M. Fenzel, Deputy County Atty., and Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div., Phoenix, for real party in interest.

## OPINION

JACOBSON, Judge.

In this special action from the trial court's denial of defendants' motion to dismiss, or in the alternative, to remand to the grand jury for a redetermination of probable cause, we must decide whether the killing of a fetus can constitute first degree murder under A.R.S. § 13–1105.

### Facts and Procedural Background

Nghia Hugh Vo and Richard Paredez (petitioners) are co-defendants in superior court, charged by indictment with, among other things, two counts of first degree murder in violation of A.R.S. § 13–1105, for the deaths of an adult victim, a pregnant female, and her unborn fetus. Both died as a result of a gunshot wound to the mother's head, allegedly fired by Vo during a freeway shooting on May 14, 1991.

The evidence presented to the grand jury was that Vo, Paredez, and a third defendant allegedly were riding in a stolen car on May 14, 1991. Paredez was driving and Vo was in the front passenger seat. They entered Interstate 17 at the Peoria entrance, headed south, and accelerated into the fast lane, behind a pickup truck in which the victim and her husband were driving. Following an alleged exchange of gestures between the occupants of the two vehicles, Vo allegedly rolled down the window and fired two shots at the pickup truck. One of the shots struck the victim, who was the passenger in the pickup truck, killing her and her fetus. The investigating police officer testified as follows about the fetus:

Q. There was also a discussion [with the medical examiner who performed the autopsy] about the baby. What was the cause of death of the baby?

A. He said the baby died as a direct result of the shooting death of its mother.

The first degree murder statute, A.R.S. § 13–1105(A)(1), was read to the grand jury, along with the definition of "person" as "a human being," which is contained in A.R.S. § 13–1101(3). A grand juror later questioned the prosecutor:

[GRAND JUROR]: Under definitions, suppose children who are under 14. *Has that been clearly defined to include unborn children?*

[PROSECUTOR]: We're going to give you a definition of a person and *in part of that definition is that there is a civil case in Arizona that held that a person encompasses a stillborn viable fetus.* There is a civil case on that. There is no criminal case that I am aware of, but there is a civil case that says that.

The parties agree that the civil case referred to is *Summerfield v. Superior Court,* 144 Ariz. 467, 698 P.2d 712 (1985).

On June 4, 1991, the grand jury returned indictments against petitioners for, among other things, two counts of first degree murder in violation of A.R.S. § 13–1103. On July 17, 1991, Vo moved to dismiss, or, in the alternative, to remand for a new finding of probable cause on Count II of the indictment, which alleged first degree murder of the fetus. The motion to dismiss was based on the contention that a fetus is not a "cognizable 'victim'" under Arizona's first degree murder statute. Al-

ternatively, Vo argued that the prosecutor engaged in prosecutorial misconduct by misinforming the jury about that law (1) by not instructing the jury about the manslaughter statute, A.R.S. § 13–1103(A)(5), which includes the death of an unborn child; (2) by giving the jury a definition of "person" from a civil case; and (3) by eliciting misleading testimony about the status of the development of the fetus.

The state responded that the prosecutor's instructions to the grand jury were proper under Arizona law because the Arizona Supreme Court has defined a stillborn, viable fetus as a "person" within the civil context of the wrongful death statute, based on *Summerfield*. The state pointed out that two other jurisdictions have applied the definition of "person" within their wrongful death statutes to a criminal charge involving the death of a fetus. *See Commonwealth v. Cass*, 392 Mass. 799, 467 N.E.2d 1324 (1984), and *State v. Horne*, 282 S.C. 444, 319 S.E.2d 703 (1984). The state also reasoned that the manslaughter statute was inapplicable to Vo in the absence of evidence that he knew the victim was pregnant or that he intended harm to the fetus. *See State v. Amaya–Ruiz*, 166 Ariz. 152, 172–73, 800 P.2d 1260, 1280–81 (1990). In a supplemental response, the state also argued that the manslaughter statute applied only to "non-viable fetuses, while the other homicide statutes may be applied to viable fetuses." [1]

Subsequently, petitioner Paredez joined in both the motion to dismiss and the alternative motion for redetermination of probable cause.

After a hearing on the consolidated motions, the trial court issued its minute entry ruling on November 7, 1991. With regard to the issue of the prosecutor's conduct before the grand jury, the court found "that there was no misconduct that would warrant an order remanding this matter to the grand jury, much less dismissing the charges against defendant [Vo]." The

court found that the prosecutor's decision not to read the manslaughter statute to the grand jury was justified by its inability to show defendant's mental state toward the fetus, and that the reference to *Summerfield* "was neither inaccurate nor misleading." Regarding Vo's motion to dismiss, the court ruled:

Intertwined throughout Defendant's Motion is the argument that he cannot be held criminally responsible for the death of a fetus. Pursuant to A.R.S. §§ 13–1105(A)(1) and 13–1101(3), the State must establish that an unborn child is a "person" before first degree murder liability can attach. The Court concludes that the unborn ... child was a human being, and thus a "person," for purposes of A.R.S. § 13–1105. *See Com. v. Cass*, 392 Mass. 799, 467 N.E.2d 1324 (1984); *Mone v. Greyhound Lines, Inc.* [368 Mass. 354], 331 N.E.2d 916 (Mass.1975). Having reviewed a number of opinions dealing with this question, it is clear to this Court that the law has evolved to the point that one who causes the death of an unborn child can be held criminally liable. To the extent that one can divine legislative intent in Arizona, the Court concludes that, for the reasons stated in *Summerfield, supra,* as well as reasons that are apparent from a review of Chapter 11 of the Arizona Criminal Code, the Arizona Legislature intended that criminal liability attach in cases like the present.

The court also concluded that "prospective-only application is not warranted here," and denied Vo's motions.

On December 20, 1991, Vo and Paredez moved the trial court to stay further proceedings so that they could file this special action, and the court granted a sixty-day stay. Vo filed his petition for special action in this court on December 27, 1991, and Paredez requested permission to join the action on January 2, 1991, which this

---

**1.** No evidence was presented to the grand jury in this case that the fetus was viable at the time of the mother's death. Indeed, the record does not indicate the gestational age of the fetus on the date of the incident. Although counsel in-

formed this court at oral argument that the victim was 23 weeks pregnant at the time of her death, that information was not available in the record before either the grand jury or the trial court.

court granted by order dated January 3, 1991.

### Special Action Jurisdiction

Petitioners procedurally framed their arguments in the trial court as a motion to dismiss or an alternative motion to remand for redetermination of probable cause. The nature of the relief they were seeking, however, was a determination that a fetus is not a "person" within the meaning of the first degree murder statute, and that they therefore could not be charged with murder under existing Arizona statutory criminal law. This argument, if successful, would require an order of dismissal, based on a finding that the indictments were insufficient as a matter of law, rather than a remand for a new determination of probable cause for denial of a substantial procedural right. *Compare* Rule 16.5 *with* Rule 12.9, Arizona Rules of Criminal Procedure. We therefore consider their special action petition to seek relief primarily from the denial of a motion to dismiss, regardless of how their arguments were procedurally labeled in the trial court.

■ As a general rule, special action is not an appropriate vehicle for review of a denial of a motion to dismiss. *See State v. Superior Court*, 123 Ariz. 324, 329–30, 599 P.2d 777, 782–83 (1979). However, where an issue is one of first impression of a purely legal question, is of statewide importance, and is likely to arise again, special action jurisdiction may be warranted. *Id.* We also note that this case raises an issue analogous to the one addressed by special action review in *Summerfield*, where the court accepted special action jurisdiction for the following reasons:

> In the situation at bench, there are several pending cases in the superior courts which present the same issue. Normal appellate procedures will result in unnecessary cost and delay to all litigants.... The question presented is a clear issue of law with obvious statewide significance.

The congruence of these factors militates in favor of our accepting jurisdiction. 144 Ariz. at 469, 698 P.2d at 714 (citations omitted). Moreover, our special action jurisdiction has been properly invoked to consider the legal issue whether the grand jury was properly instructed on the definition of "person." In deciding this issue we, of necessity, must decide the issue underlying the motion to dismiss. Because of these factors, in the exercise of our discretion, we accepted special action jurisdiction, and issued an order granting relief with an opinion to follow. This is that opinion.

### Merits

#### I. Legal Background

In 1977, the Arizona Legislature revised the entire criminal code. *See generally*, Laws 1977, Ch. 142, §§ 1 to 178, effective October 1, 1978. The drafters specifically abolished all common law crimes and provided that "no act or omission constitutes an offense unless it is an offense under this title or under another statute or ordinance." A.R.S. § 13–103. Because of this enactment, Arizona is a "code state" as far as its criminal law is concerned.

Homicide crimes were codified in Chapter 11 of Title 13. *See* Laws 1977, Ch. 142, § 60. The first degree murder prohibition at issue in this case provides:

> A person commits first degree murder if:
> 1. Knowing that his conduct will cause death, such *person* causes the death of *another* with premeditation....

A.R.S. § 13–1105(A)(1) (emphasis added).[2] The definition of "person" for purposes of Chapter 11 provides:

> In this chapter, unless the context otherwise requires:
>
> ....
>
> 3. "Person" means a human being.

A.R.S. § 13–1101(3).

The manslaughter statute, also enacted in 1977, similarly provided that that crime was committed by "[r]ecklessly causing the

---

**2.** Although this statute has been amended since 1977, the words "person" and "another" have remained unchanged. We assume, and the parties agree, that the term "another" refers by implication to "another person." *See, e.g., State v. Larsen*, 578 P.2d 1280, 1282 (Utah 1978) ("another" implies "another person").

death of another *person.*" A.R.S. § 13–1103(A)(1) (emphasis added). However, in 1983, the legislature amended the manslaughter statute to add the following provision:

A. A person commits manslaughter by:

. . . .

5. Knowingly or recklessly causing the death of *an unborn child* at any stage of its development by any physical injury to the mother of such child which would be murder if the death of the mother had occurred.

A.R.S. § 13–1103(A)(5), amended by Laws 1983, Ch. 268, § 2. This amendment did not affect the provision regarding death of a person in subsection (A)(1), nor did it change the definition of "person" in A.R.S. § 13–1101(3).

Although no Arizona appellate case has ever addressed the issue whether the term "person" within the first degree murder statute includes an unborn fetus, the Arizona Supreme Court has held that a stillborn, viable fetus is a "person" entitled to recover tort damages for its wrongful death under the statutory authority of A.R.S. § 12–611.[3] *Summerfield,* 144 Ariz. at 479, 698 P.2d at 724. The court suggested that the legislature that enacted Arizona's first wrongful death statute in 1887 did not intend to preclude the judiciary from expanding the remedy under evolving common law principles. *Id.* at 472, 698 P.2d at 717. The court also noted that the legislature had not included a statutory definition of "person" within the wrongful death statute. *Id.* at 475, 698 P.2d at 720.

In recognizing the majority rule in thirty-two other jurisdictions that survivors of a viable fetus may recover for wrongful death, the *Summerfield* court acknowledged that "the common law has evolved to the point that the word 'person' does usually include a fetus capable of extrauterine life." 144 Ariz. at 477, 698 P.2d at 722. Apart from the legislative goal of compensating survivors implicit in the remedial purpose of A.R.S. § 12–611, the court also discerned a "legislative goal of protecting the fetus" by analogy to other areas of the law, including the statutory amendments adding "an unborn child" to the manslaughter statute. *Id.* at 476, 698 P.2d at 721. Although the court speculated that the 1887 legislature probably never considered whether a fetus was a person when it passed the wrongful death act, *id.* at 467, 698 P.2d at 712, the court concluded that the issue has now "come within the province of common law development." *Id.* at 479, 698 P.2d at 724. The court recognized that no prosecution would lie for murder of a fetus at common law, but concluded that "the analogy between civil liability for tort and criminal liability for causing death is not apt." *Id.* at 474, 698 P.2d at 719. The court also recognized that "[t]he word 'person' can mean different things in different contexts," and rejected the argument that it was precluded from recognizing a fetus as a person for purposes of tort recovery by the holding of *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), that a fetus is not a person within the meaning of the fourteenth amendment to the United States Constitution. *Id.* 144 Ariz. at 478, 698 P.2d at 723.

The state urges us to now adopt in the criminal area the civil rule articulated in *Summerfield.* This issue requires us to construe the statutory meaning of "person" and "human being" within the limited context of the criminal first degree murder statute. In doing so, we need to emphasize that this court is not embarking upon a resolution of the debate as to "when life begins." Rather our task is specifically to determine the legislative intent in defining first degree murder of a "person."

---

**3.** Arizona's wrongful death statute provides:

When death of a *person* is caused by the wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action to recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death was caused under such circumstances as amount in law to murder in the first or second degree or manslaughter.

A.R.S. § 12–611 (emphasis added).

## II. *Rules of Criminal Statutory Construction in Arizona*

■ The legislature has abolished the common law rule of strict construction of criminal laws, and has provided that criminal laws "must be construed according to the fair meaning of their terms to promote justice and effect the objects of the law, including the purposes stated in A.R.S. § 13–101." A.R.S. § 13–104; *see also State v. Tramble*, 144 Ariz. 48, 695 P.2d 737 (1985). Among the purposes of the criminal law in Arizona, the legislature has included the following:

> It is declared the public policy of this state and the general purposes of the provisions of this title are:
>
> ....
>
> 2. To give fair warning of the nature of the conduct proscribed and of the sentences authorized upon conviction....

A.R.S. § 13–101(2). Although the rule of strict construction of criminal statutes no longer applies, where the meaning of a statute is unclear, the "rule of lenity" requires us to resolve any doubt in a defendant's favor. *State v. Pena*, 140 Ariz. 545, 683 P.2d 744 (App.1983), *approved* 140 Ariz. 544, 683 P.2d 743 (1984); *State v. Sirny*, 160 Ariz. 292, 772 P.2d 1145 (App. 1989).

■ We must also consider a criminal defendant's constitutional right to due process: "The first essential of due process is fair warning of the act which is made punishable as a crime." *Keeler v. Superior Court*, 2 Cal.3d 619, 633, 470 P.2d 617, 626, 87 Cal.Rptr. 481, 490 (1970). We may not expand the scope of a crime by judicial decision to punish a defendant for an act that was not criminal when it was performed. *Bouie v. Columbia*, 378 U.S. 347, 353–54, 84 S.Ct. 1697, 1702–03, 12 L.Ed.2d 894 (1964).

## III. *Legislative Intent*

With these general principles of statutory construction in mind, we must next determine whether the Arizona legislature intended to include a fetus within the definition of a "person" within the homicide statutes as "a human being." *See* A.R.S. § 13–1101(3).

■ In determining this intent, we look first to the way in which the words of the statute were understood at the time the legislation was enacted. *Kriz v. Buckeye Petroleum Co.*, 145 Ariz. 374, 701 P.2d 1182 (1985). Although there are no common law crimes in Arizona, when a crime such as murder is enacted by its common law name, we assume the legislature was aware of the common law meanings of the words in that statute and intended their use. *See Engle v. State*, 53 Ariz. 458, 90 P.2d 988 (1939); *State v. Bowling*, 5 Ariz. App. 436, 427 P.2d 928 (1967). *See also Keeler v. Superior Court*, 2 Cal.3d at 628, 470 P.2d at 622, 87 Cal.Rptr. at 486; *People v. Greer*, 79 Ill.2d 103, 106, 37 Ill.Dec. 313, 319, 402 N.E.2d 203, 209 (1980); *State v. Amaro*, 448 A.2d 1257, 1259 (R.I.1982) ("the Legislature would have expressly deviated from the common-law born-alive meaning of 'person' had it meant to do so.").

■ The common law rule was that only persons "born alive" could be subject to homicide; thus, the commonly accepted meaning of the statutory words "human being" or "person" in 1977, when the legislature enacted the current criminal code, did not include a fetus. *See generally* Forsythe, *Homicide of the Unborn Child: The Born Alive Rule and Other Legal Anachronisms*, 21 Val.U.L.Rev. 563 (1987). The reason for the "born alive rule," according to the case in which it was first enunciated in 1601, was the difficulty of proving whether a stillborn child would have survived its birth absent the act that would have constituted murder after the child were born alive, because of the high rate of fetal mortality at that time.[4] *Id.* at

---

4. The "born alive rule" has received wide criticism in light of recent advances in medical technology that make determinations of the cause of a fetal death routine today. *See generally* Forsythe, *supra; see also* Note, *State v.*

*Beale and the Killing of a Viable Fetus: An Exercise in Statutory Construction and the Potential for Legislative Reform,* 68 N.C.L.Rev. 1144 (Sept. 1990). However, because we are statutorily restrained from construing our crim-

384, quoting *Sim's Case,* 75 Eng.Rep. 1075 (K.B. 1601) (cited as authority for the "born alive rule" in American common law).

Although legislative history is scarce on this point, one authoritative commentator noted that " '[h]omicide' and 'person' are largely self-explanatory. 'Person' does not include unborn children. *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973)." R. Gerber, *Criminal Law of Arizona* (State Bar of Arizona 1978) at 147. These remarks, attributed to the Arizona Criminal Code Commission,[5] are in accord with the definition of "human being" as a "person who has been born and is alive" in the Model Penal Code at that time. *See* Model Penal Code § 211.0(1), 10 U.L.A. 532 (1974).

Another indication of legislative intent is the way in which the legislature has referred to a fetus in other sections of the criminal code. For example, the manslaughter statute, in two separate subsections, prohibits not only "[r]ecklessly causing the death of another *person,*" A.R.S. § 1103(A)(1), but also expressly prohibits "[k]nowingly or recklessly causing the death of an *unborn child* at any stage of its development by any physical injury to the mother of such child which would be murder if the death of the mother had occurred," A.R.S. § 13–1103(A)(5). Thus, the legislature treated a fetus as separate and distinct from a "person" in a criminal context. *See also* A.R.S. § 13–702(D)(10) (the death of an "unborn child" is an ag-

gravating factor for purposes of criminal sentencing). The legislature's inclusion of an "unborn child" in a statute that separately refers to a "person" indicates an intent to exclude a fetus from other statutes in which it is not specifically included. *See Pima County v. Heinfeld,* 134 Ariz. 133, 134, 654 P.2d 281, 282 (1982) (specific inclusion in one class may indicate exclusion from other classes where not mentioned).

In another area of the criminal law, the legislature has not seen fit to treat prohibited abortions as murders. *See* A.R.S. §§ 13–3603 to –3605.[6] In the same year that the homicide statutes were enacted into the current criminal code, punishing first degree murder by either life imprisonment or death, the legislature enacted criminal abortion statutes, punishing the abortional death of a fetus by two to five years imprisonment. *Compare* A.R.S. § 13–1101 (1977) (homicide) *with* A.R.S. § 13–3603 (1977) (abortion). Conceivably, by separating the crimes of murder of a person and abortion of a fetus, the legislature intended to retain a distinction between a fetus and a person. *See, e.g., Hollis v. Commonwealth,* 652 S.W.2d 61, 64 (Ky.1983) (because legislature enacted murder and abortion statutes simultaneously, "the legislature intended conduct directed to cause the unlawful abortion of a fetus ... to be punished under the abortion statute"). We also note that, under the prior Arizona criminal code, an acquittal of murder would

---

inal statutes based on evolving common law, we do not address the wisdom of the common law rule. We merely point out its existence at the time our current criminal code was enacted, in an effort to determine the legislature's intent in defining "person" as a "human being" subject to the homicide statutes.

**5.** These remarks are set forth in a section entitled "Explanation of Statute" referring to A.R.S. § 13–1101(3). "Explanation of Statute" is described as providing a "generally objective exposition of statutory meaning and coverage as these appear on the face of the statute and in the comments of the Code Commission." R. Gerber, *supra,* at vii. Although the conclusion that a fetus is not a person for purposes of homicide is not necessarily compelled by *Roe v. Wade, see* Kader, *infra,* this statement of what

the Code Commission believed the law to be in 1977 gives us an indication that its intent may have been to exclude a fetus by defining "person" as "human being" in the context of the murder statute.

**6.** We note that the abortion statutes, as currently codified, may be unenforceable under the constitutional principles articulated in *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). *See State v. New Times, Inc.,* 20 Ariz. App. 183, 185, 511 P.2d 196, 198 (1973); *State v. Wahlrab,* 19 Ariz.App. 552, 553, 509 P.2d 245, 246 (1973); *Nelson v. Planned Parenthood Center,* 19 Ariz.App. 142, 152, 505 P.2d 580, 590 (1973). However, we cite these provisions for the limited purpose of ascertaining the scope of the protection the legislature intended to afford a fetus in enacting the existing criminal law.

not necessarily exonerate a defendant of a charge of abortion because abortion did not require the "killing of a human being." *Hightower v. State*, 62 Ariz. 351, 353, 158 P.2d 156, 157 (1945) (construing former Code 1939, § 43–301).

An examination of noncriminal areas of Arizona statutory law in which the legislature has protected unborn children also indicates that the legislature did not intend a fetus to constitute a "person" for all purposes. For example, a certificate must be filed for a fetal death, A.R.S. § 36–329, but this is a separate requirement from a death certificate being filed for a "person." A.R.S. § 36–327. The legislature found it necessary to include within the Uniform Anatomical Gift Act a separate definition of "decedent" as including "a stillborn infant or fetus." A.R.S. § 36–841. Indeed, within Title 36, the legislature has specifically defined "viable fetus" not as "a human being" but as "the unborn offspring of human beings which has reached a state of fetal development so that, in the judgment of the attending physician on the particular facts of the case, there is a reasonable probability of the fetus' sustained survival outside the uterus, with or without artificial support." A.R.S. § 36–2301.01(D). This separate treatment of a fetus, apart from other "persons" in noncriminal areas of statutory law, also points to the conclusion that where the legislature intends to protect the unborn, it does so by specific reference to a fetus, separate and apart from the general definition of "person" or "human being."

These observations lead us to conclude, as a matter of statutory construction, that the legislature did not intend to include a fetus in the definition of "person" or "human being" within the murder statute. Although we agree with the commentators that perhaps the time has come to reexamine the protections afforded unborn children under Arizona's criminal law in light

of the scientific advances in the areas of obstetrics and forensics,[7] we believe that any expansion of the law in this area is the prerogative of the Arizona legislature, not of the courts.

The policy reasons for deferring to the legislature in this area are strong. First, the legislature has the sole authority to create new crimes by virtue of A.R.S. § 13–103. Second, the legislature is composed of regularly elected members, subject to the electoral will of the population of their respective districts, and thus the legislature is more attuned to the will of the public on public policy than are the courts. Third, the legislature conducts public hearings in a nonadversarial manner, and is more able to explore all prospective aspects of a situation that may factually occur when it creates a crime. This court, however, is limited to ruling solely on the specific issue in the single case before it, and we base our decision on the facts as developed by adversarial parties as applied only to the limited issues preserved for review. *See, e.g., Hollis v. Commonwealth*, 652 S.W.2d at 61 ("Our decision is limited to whether Hollis can be charged with violating this statute.... The much larger metaphysical question of WHEN DOES LIFE BEGIN? is *not* the subject of this opinion.") We agree with the conclusion of the Connecticut Supreme Court on this issue:

> For this court to explore new fields of crime is foreign to modern concepts of justice and raises serious questions of separation of powers between it and the legislature. Therefore, any redefining of the word "person" must be left to the legislature, which has the primary authority to define crimes.

*State v. Anonymous*, 40 Conn.Supp. 498, 516 A.2d 156 at 159 (1986).

### IV. *Other Jurisdictions*

The result we reach is in accord with the overwhelming majority of courts in our sis-

---

7. *See, e.g.,* Note, *supra,* 68 N.C.L.Rev. at 1147. Physicians can now determine the existence and approximate age of a live fetus by fetal heart monitoring, sonography, and other methods. The cause of a fetal death can often be determined to a medical certainty. Additionally,

"birth itself is no longer a violent perilous adventure." *Id.* Some authorities estimate the fetal survival rate after twenty weeks of pregnancy at ninety-nine percent. *Id.; see also People v. Guthrie,* 97 Mich.App. 226 at 232, 293 N.W.2d 775 at 778 (1980).

ter states. Other jurisdictions that have decided this issue have held, nearly unanimously, that a fetus or unborn child is not a "person," a "human being," or "another" within the meaning of their murder, vehicular homicide, or manslaughter statutes absent an express direction from the legislature. *See, e.g., Clarke v. State,* 117 Ala. 1, 23 So. 671 (1898) (recognizing "born-alive" rule for homicide); *Meadows v. State,* 291 Ark. 105, 722 S.W.2d 584 (1987) (not a "person"; manslaughter); *Keeler v. Superior Court,* 2 Cal.3d 619, 87 Cal.Rptr. 481, 470 P.2d 617 (1970) (not a "human being"; murder); *State v. Anonymous,* 40 Conn. Supp. 498, 516 A.2d 156 (1986) (not a "human being"; murder); *State v. McCall,* 458 So.2d 875 (Fla.D.Ct.App.1984) (not a "human being"; vehicular homicide and DWI manslaughter); *Billingsley v. State,* 183 Ga.App. 850, 360 S.E.2d 451 (1987) (not a "person"; vehicular homicide); *People v. Greer,* 79 Ill.2d 103, 37 Ill.Dec. 313, 402 N.E.2d 203 (1980) (not a "person"; murder); *State v. Trudell,* 243 Kan. 29, 755 P.2d 511 (1988) (not a "person"; vehicular homicide); *Hollis v. Commonwealth,* 652 S.W.2d 61 (Ky.1983) (not a "person"; criminal homicide); *State v. Gyles,* 313 So.2d 799 (La.1975) (not a "human being"; murder); *People v. Guthrie,* 97 Mich.App. 226, 293 N.W.2d 775 (1980) (not "another"; negligent vehicular homicide); *State v. Soto,* 378 N.W.2d 625 (Minn.1985) (not a "human being"; vehicular homicide); *State v. Doyle,* 205 Neb. 234, 287 N.W.2d 59 (1980) (fetus must be "born alive" for manslaughter); *State v. Beale,* 324 N.C. 87, 376 S.E.2d 1 (1989) (not "murder"); *In re A.W.S.,* 182 N.J.Super. 278, 440 A.2d 1144 (1981) (not a "human being"; criminal homicide); *State v. Willis,* 98 N.M. 771, 652 P.2d 1222 (App.1982) (not "human being"; vehicular homicide); *People v. Joseph,* 130 Misc.2d 377, 496 N.Y.S.2d 328 (1985) (not "death" of a "person"; criminally negligent homicide and vehicular manslaughter); *State v. Dickinson,* 28 Ohio St.2d 65, 275 N.E.2d 599 (1971) (not a "person"; homicide by vehicle); *State v. Harbert,* 758 P.2d 826 (Okla.Crim.App.1988) (not a "person"; murder); *State v. Amaro,* 448 A.2d 1257 (R.I.1982) (not a "person"; vehicular homicide); *State v. Evans,* 745 S.W.2d 880 (Tenn.Crim.App.1987) (not "person" or "human life"; vehicular homicide); *Showery v. State,* 690 S.W.2d 689 (Tx.App.1985) (not "homicide"); *State v. Larsen,* 578 P.2d 1280 (Utah 1978) (not "another"; automobile homicide); *Lane v. Commonwealth,* 219 Va. 509, 248 S.E.2d 781 (1978) (no *corpus delicti;* murder); *State ex rel. Atkinson v. Wilson,* 175 W.Va. 352, 332 S.E.2d 807 (1984) (not "murder"); *Huebner v. State,* 131 Wis. 162, 111 N.W. 63 (1907) (recognizing "born-alive" rule); *Bennett v. State,* 377 P.2d 634 (Wyo.1963) (manslaughter requires that infant was born alive); *see generally* Annotation, *Homicide Based on Killing of Unborn Child,* 40 A.L.R.3d 444 (1971 & Supp. Aug. 1991).

Subsequent to many of these decisions, the legislatures of those states amended the relevant statutes to unambiguously include a viable fetus or an unborn child at any stage of development.[8]

---

**8.** For example, following the decision in *Keeler v. Superior Court,* the California legislature revised its murder statute to provide:

Section 187. Murder defined; death of a fetus

(a) Murder is the unlawful killing of a human being, *or a fetus,* with malice aforethought.

(b) This section shall not apply to any person who commits an act that results in the death of a fetus if any of the following apply:

(1) The act complied with the [abortion statutes].

(2) The act was committed by a holder of a physician's and surgeon's certificate ... in a case where, to a medical certainty, the result of childbirth would be death of the mother of the fetus or where her death from childbirth, although not medically certain, would be substantially certain or more likely than not.

(3) The act was solicited, aided, abetted, or consented to by the mother of the fetus.

(4) Subdivision (b) shall not be construed to prohibit the prosecution of any person under any other provision of law.

Cal.Penal Code § 187 (West 1988). In sentencing, California does not distinguish between murder of a "person" and murder of a "fetus." *See* Cal.Penal Code §§ 189–190.6 (West 1988). The term "fetus" within this statute has been judicially limited to a viable fetus. *People v. Smith,* 59 Cal.App.3d 751, 756, 129 Cal.Rptr. 498, 501 (1976).

*See also, e.g.,* Fla.Stat.Ann. § 782.09 (1976); La.Rev.Stat.Ann. § 14:2(7) (West 1986); Ill.Rev. Stat.Ch. 38, ¶¶ 9–1.1, 12–3.1 (1986 Supp.); Minn.

Only two courts have judicially determined that a fetus was within the protection of homicide statutes based on common law principles.[9] *See Commonwealth v. Cass*, 392 Mass. 799, 467 N.E.2d 1324 (1984) (8½ month fetus is a "person" within intent of vehicular homicide statute); *State v. Horne*, 282 S.C. 444, 319 S.E.2d 703 (1984) (nine-month fetus is a "person" within meaning of statutory definition of murder).

In both *Cass* and *Horne*, the court expanded the criminal law through principles of common law interpretation that are not available to this court in the present case. For example, in *Horne*, the South Carolina Supreme Court reasoned as follows:

> This court has the right and the duty to develop the common law of South Carolina to better change an everchanging society as a whole. In this regard, the criminal law has been the subject of change.... The fact that this particular issue has not been raised or ruled on before does not mean we are prevented from declaring the common law as it should be.

319 S.E.2d at 704. In *Cass*, the court reasoned:

[W]e reject the notion that we are unable to develop common law rules of criminal law because the Legislature has occupied the entire field of criminal law. While this may be true in code jurisdictions, it is not true in this Commonwealth, where our criminal law is largely common law. 467 N.E.2d at 1327. This distinction, between "code states," which have abolished common law crimes and provide that no crime can be defined other than by the legislature, and "common law states," which recognize common law crimes and allow judicial decisions to fashion expanded definitions of crimes, is critical. *See, e.g., State v. Soto*, 378 N.W.2d at 627–30 (rejecting the reasoning of *Cass* and *Horne* because, although Massachusetts and South Carolina are "common law states," Minnesota is a "code state").

■ Arizona is a "code state," and this court is legislatively precluded from creating new crimes by expanding the common law through judicial decision. A.R.S. § 13–103. Our function, therefore, is limited to interpreting what the legislature has prohibited in light of its intent, rather than expanding the criminal law based on our own sense of changing societal perceptions of what the law should be. Unlike the courts in *Cass* and *Horne*,[10] therefore, we

---

Stat.Ann. § 609.266 (West 1988); N.Y.Penal Laws § 125.00 (McKinney 1987); R.I.Gen.Laws 11–23–5 (1981). The Minnesota statute prohibits "murder of an unborn child," while the New York statute approaches "death of an unborn child" as "abortion in the first degree." *Compare* Minn.Stat.Ann. § 609.266 (West 1988) *with* N.Y.Penal Laws § 125.00 (McKinney 1987).

*See generally,* Forsythe, *Homicide of the Unborn Child: The Born Alive Rule and Other Legal Anachronisms*, 21 Val.U.L.Rev. 563, 619–625 & App. A (1987) (proposing model legislation).

**9.** We note that one other court has recently held that a fetus is a "person" within the meaning of its involuntary manslaughter statute. *See State v. Knapp*, 1991 WL 254275 (Dec. 3, 1991). This holding was based not on common law principles, however, but on a reading of "legislative intent" from the repeal of a manslaughter statute that included "an unborn quick child," to include a fetus as a "person" within that statute. *Id.* (interpreting Mo.Rev.Code § 565.024). We note that Missouri is a "code state" rather than a "common law" state. *See* Mo.Rev.Code § 556.-026 ("No conduct constitutes an offense unless

made so by this code or by other applicable statute"). We also note that, although the Missouri Court of Appeals did not rely on it in *Knapp*, the Missouri legislature has enacted a statute, effective January 1, 1988, that requires all laws of that state to be interpreted to recognize an unborn child as a person from the moment of conception until birth. *See* Mo.Rev. Code § 1.205. For those distinguishing reasons, we find *Knapp* unpersuasive.

**10.** Additionally, we note that in both *Cass* and *Horne*, the courts held that their decisions applied prospectively only, and not to the defendant in a case of first impression, because their expanded definition of the crime was "unforeseeable" and would cause due process problems if retroactively applied to their decisions. *Cass*, 467 N.E.2d at 1329 ("Our decision may have been unforeseeable.... We find it highly unlikely that the defendant could have relied on prior law in judging his conduct"); *Horne*, 319 S.E.2d at 704 ("at the time of the stabbing, no South Carolina decision had held that killing of a viable human being *in utero* could constitute a criminal homicide. The criminal law whether declared by the courts or enacted by the legislature cannot be applied retroactively").

cannot expand the scope of the crime of murder based on evolving common law principles. Furthermore, we cannot consider the wisdom or soundness of policy of legislative enactments, because such matters are clearly addressed to the legislature, not to the courts. *See, e.g., Schrey v. Allison Steel Mfg. Co.,* 75 Ariz. 282, 286, 255 P.2d 604, 606 (1953). We do agree, however, with the *Cass* and *Horne* courts that due process problems might arise in this case if we applied the first degree murder statute to a fetal murder in view of the lack of prior authority. This is particularly true given that the manslaughter statute, which is the only homicide statute that specifically prohibits the "death of an unborn child," has been construed to require a separate criminal intent toward the fetus. *See Amaya–Ruiz,* 166 Ariz. at 172–73, 800 P.2d at 1280–81.[11]

## V. *Application of Summerfield to the Murder Statute*

Based on our previous discussion, we reject the state's argument and the trial court's conclusion that the *Summerfield* holding that a viable fetus is a "person" within the meaning of our wrongful death statute expands the common law definition of "person" within the penal murder statute. We also do not believe the *Summerfield* decision applies in the criminal context for several other reasons.

First, the *Summerfield* court clearly rejected any analogy between civil tort liability and criminal liability for causing death, noting that the common law probably did not recognize murder of a fetus. 144 Ariz. at 474, 698 P.2d at 719. Second, we point out that the wrongful death statute, unlike the murder statute, is a remedial statute in derogation of the common law that should be liberally construed to "advance the remedy" not provided by the common law that it abrogated. *See Carrow Co. v. Lusby,*

167 Ariz. 18, 804 P.2d 747 (1990); *Terry v. Linscott Hotel Corp.,* 126 Ariz. 548, 617 P.2d 56 (App.1980). The criminal statutes, however, must be interpreted to give "fair warning." A.R.S. § 13–101(2). Third, as the *Summerfield* court pointed out, "The issue of recovery for tort law damage to the fetus has come within the province of common law development." 144 Ariz. at 479, 698 P.2d at 724. As we have already explained, the development of the criminal law through common law principles has been abolished in Arizona. A.R.S. § 13–103. Fourth, the *Summerfield* court noted that the Arizona legislature had not provided a definition of the word "person" as used in A.R.S. § 12–611. 144 Ariz. at 475, 698 P.2d at 720. However, the legislature has defined "person" within the meaning of the homicide statutes as "a human being," A.R.S. § 13–1101(3), and has otherwise included a fetus within the protection of the manslaughter statute as "unborn child." A.R.S. § 13–1105(A)(1).

Finally, we recognize, as did the *Summerfield* court, that "[t]he word 'person' can mean different things in different contexts." 144 Ariz. at 478, 698 P.2d at 723. The court concluded that the holding of *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), that a fetus is not a "person" within the meaning of the fourteenth amendment, "neither prohibits nor compels" the inclusion of a fetus as a "person" in the context of the wrongful death statute. *Summerfield,* 144 Ariz. at 478, 698 P.2d at 723; *see also* D. Kader, *The Law of Tortious Prenatal Death Since Roe v. Wade,* 45 Mo.L.Rev. 639 (1980). Nor do we believe *Roe v. Wade* controls the issue before us for the same reasons as those expressed in *Summerfield.*

Based on these distinctions between the tort issues involved in *Summerfield* and the criminal issue involved here, we agree with other courts that have held that tort

---

11. In *Amaya–Ruiz,* the court noted, although it did not decide, that the statutory language of the manslaughter statute, "*'if* the death of the mother *had occurred,'* might also support an argument that the statute is inapplicable if the woman is murdered, and is only applicable if she survives." 166 Ariz. at 173 n. 1, 800 P.2d at 1281 n. 1 (emphasis in original). We express no

opinion regarding the application of the manslaughter statute to the limited facts before us. *But see State v. Brewer,* 170 Ariz. 486, 507–508, 826 P.2d 783, 804–05 (Ariz.1992), (upholding trial court's ruling that state was free to proceed with manslaughter charge for death of a fetus when mother also died).

decisions are neither binding nor persuasive in deciding whether a fetus is a person under the murder statute. *See, e.g., State v. Soto,* 378 N.W.2d at 630 ("It does not follow that because we held ... that next of kin might recover damages arising out of the destruction of a viable fetus in a civil action ..., that a viable fetus is a 'human being' for purposes of the criminal law"); *People v. Greer,* 79 Ill.2d at 155, 37 Ill.Dec. at 319, 402 N.E.2d at 209 ("Differing objectives and considerations in tort and criminal law foster ... different principles governing the same factual situation"); *State ex rel. Atkinson v. Wilson,* 332 S.E.2d at 810 ("there exists a distinction between a court's power to evolve common law principles in areas in which it has traditionally functioned, i.e., the tort law, and in those areas in which the legislature has primary or plenary power, i.e., the creation and definition of crimes and penalties.") [12]

We do not question the constitutional power of the state legislature to prohibit conduct that causes the death of a fetus. In the context of *Roe v. Wade,* the state "has a compelling interest in the life of a fetus when it reaches the state of viability sufficient to legislate legal sanctions punishing those who destroy it, subject to the limitations that such sanctions shall not apply where the life or health of the mother is involved." *Hollis,* 652 S.W.2d at 63. However, we believe the state's interest in defining the criminal penalties for those who would harm the unborn can be asserted only by the legislature.

### Conclusion

Because we find that the legislature has not evidenced an intent to include a fetus within the meaning of "person" in the first degree murder statute, that crime is not cognizable in Arizona. This court does not have the power to expand the criminal law through evolving common law principles applied in the civil tort context of *Summerfield v. Superior Court;* only the legislature can enact a statute that prohibits death of a fetus as first degree murder.

Because petitioners could not be indicted for first degree murder of a fetus as a matter of law, we hold that the trial court erred in refusing to dismiss this count as to both petitioners. *See* Rule 16.5, Arizona Rules of Criminal Procedure. Because we hold that dismissal is warranted as a matter of law, we need not address the alternative issue of prosecutorial misconduct in instructing the grand jury.

The counts of first degree murder pertaining to the death of the fetus are dismissed as to each petitioner, without prejudice to the state to seek re-indictment of the petitioners on charges of manslaughter under A.R.S. § 13–1105(A)(5).[13] This matter is remanded for proceedings consistent with this opinion.

Jurisdiction accepted, relief granted.

KLEINSCHMIDT, Vice C.J., and GARBARINO, J., concur.

12. We also point out that one of the two jurisdictions that applied its civil decision that a fetus can recover for wrongful death to its criminal statute did so on the basis that the vehicular homicide statute at issue was enacted subsequent to its civil decision allowing recovery for the death of a fetus under the wrongful death statute, and presumed that the legislature had knowledge of that development in the common law. *Cass,* 467 N.E.2d at 1325. In Arizona, however, the current murder statute has included the definition of "person" since its adoption in 1977, at which time the current state of the "common law" was that a fetus was not a person within the meaning of the wrongful death statute. *See Kilmer v. Hicks,* 22 Ariz.App. 552, 529 P.2d 706 (1974).

13. We express no opinion on whether the state has shown evidence sufficient on the facts in this limited record to establish the elements of manslaughter as set forth in *State v. Amaya-Ruiz,* 166 Ariz. at 173, 800 P.2d at 1271. We leave that issue for the grand jury, should the state choose to pursue those charges against these petitioners.