This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------------

No. 179
The People &c.,
          Respondent,
        v.
Jennifer Jorgensen,
          Appellant.


          Richard E. Mischel, for appellant.
          Karla Lato, for respondent.
          National Advocates for Pregnant Women et al., <u>amici</u>
<u>curiae</u>.


PIGOTT, J.:

          On May 30, 2008, defendant, driving eastbound on

Whiskey Road in Suffolk County, entered the westbound lane and

struck the vehicle of Robert and Mary Kelly head on, killing them

both.  At the time of the collision, defendant was 34 weeks

pregnant.  She was taken to a local hospital where, due to signs

- 1 -

of fetal distress, she consented to an emergency cesarean section. Despite the best efforts of hospital personnel, the baby died six days later. An autopsy confirmed that the cause of death was due to injuries sustained in the accident.

Thirteen months later, defendant was indicted on three counts of manslaughter in the second degree (Penal Law § 125.15 [1]), one count of aggravated vehicular homicide (Penal Law § 125.14), and one count of operating a motor vehicle while under the combined influence of alcohol or drugs (Vehicle & Traffic Law § 1192 [4-a]).[1] After the first jury failed to reach a unanimous verdict, the parties proceeded to a second trial on all counts.

The People's theory was that defendant was traveling in excess of 50 miles per hour in a 30 mile-per-hour zone and, while under the influence of prescription drugs and/or alcohol, struck the Kelly vehicle in the Kellys' lane of traffic. As a result of the collision, defendant, who was not wearing a seatbelt, struck the steering wheel, causing injury to her unborn fetus. The People's argument at trial was that defendant's reckless conduct not only resulted in the death of the Kellys, but also her six-day-old child.

_____

[1] Prior to defendant's first trial, the defense successfully moved for the dismissal of the counts of operating a motor vehicle while using a mobile telephone, speeding, and endangering the welfare of a child, the last count being dismissed because the court held that the crime did not apply to an unborn fetus (26 Misc 3d 1232 [A] [Sup Ct, Suffolk County 2010]).

Following deliberations, the jury returned a verdict finding the defendant not guilty on all counts except manslaughter in the second degree for the death of her child. The Appellate Division affirmed defendant's conviction (113 AD3d 793 [2d Dept 2014]). A Judge of this Court granted defendant leave to appeal. We now reverse

The underlying facts and circumstances of this appeal are tragic to all parties involved. The sole issue that we reach on this appeal, however, is whether a woman can be convicted of manslaughter for reckless conduct that she engaged in while pregnant that caused injury to the fetus in utero where the child was born alive but died as a result of that injury days later (see People v Martinez, 81 NY2d 810 [1993]).[2] We hold that it is evident from the statutory scheme that the legislature, in enacting Penal Law § 125.05 (1) and § 125.15 (1), did not intend to hold pregnant women criminally responsible for conduct with respect to themselves and their unborn fetuses unless such conduct is done intentionally.

The issue is strictly one of statutory interpretation. As relevant here, "[a] person is guilty of manslaughter in the second degree when . . . [h]e [or she] recklessly causes the death of another person" (Penal Law § 125.15 [1]). Penal Law § 125.05 (1) provides that, when referring to the victim of a

_____

[2] We have no occasion to reach the remaining issues raised by defendant.

- 3 -

homicide, a person is "a human being who has been born and is alive." The question is, did the legislature, through its enactment of the two statutory provisions, intend to hold pregnant women criminally responsible for engaging in reckless conduct against themselves and their unborn fetuses, such that they should be subject to criminal liability for prenatal conduct that results in postnatal death? Under the current statutory scheme, the answer to this question is no.

This is a case of first impression. The legislature's definition of the word "person," when referring to a homicide victim, as "a human being who has been born and is alive," is relatively broad. When it is read in conjunction with the manslaughter in the second degree provision at issue here, however, it is also ambiguous as to whether the legislature intended to criminalize a mother's own reckless conduct directed at herself and, consequently, the fetus. Consideration of the entire statutory scheme is necessary in order to divine whether the legislature intended to criminalize such conduct.

Where the legislature has decided to criminalize a pregnant woman's conduct towards her unborn fetus, it has clearly established statutory prohibitions against such conduct. In this regard, the legislature has made it a class B misdemeanor for a pregnant woman to "commit[] or submit[] to an unjustifiable abortional act upon herself" (Penal Law § 125.50 [self-abortion

- 4 -

in the second degree]).[3] According to Penal Law § 125.00, the crime of self-abortion in the second degree is not considered a "homicide." Further, the legislature has determined that a woman who is pregnant for more than 24 weeks, and who commits or submits to an unjustifiable "abortional act" that causes her to miscarry, is guilty of a class A misdemeanor (Penal Law § 125.55), not a felony.

Both "self-abortion" statutes require the mens rea of intent, and, yet, the legislature has determined that the punishment for such intentional conduct is no greater than a misdemeanor. In contrast, the manslaughter in the second degree statute under which defendant was charged and convicted is a class C felony, and requires that the People prove that defendant acted with the mental state of "recklessness," i.e., that she was "aware of and consciously disregard[ed] a substantial and unjustifiable risk" that a particular result would occur or circumstance existed (Penal Law § 15.05 [3]). We conclude that the legislature did not intend to impose greater punishment on pregnant women for their alleged reckless conduct toward a fetus than for their intentional conduct. While both first and second

_____

[3] The Penal Law defines an "abortional act" as "an act committed upon or with respect to a female, whether by another person or by the female herself, whether she is pregnant or not, whether directly upon her body or by the administering, taking or prescription of drugs or in any other manner, with intent to cause a miscarriage of such female" (Penal Law § 125.05 [2] [emphasis supplied]).

degree manslaughter statutes have provisions referencing pregnant women, those references are only in the context of non-justifiable "abortional acts" resulting in the death of the mother (as opposed to the child) (see Penal Law § 125.20 [3] [manslaughter in the first degree]; § 125.15 [2] [manslaughter in the second degree]).

Had the legislature intended to include pregnant women in the class of individuals who may be guilty of manslaughter in the second degree for reckless acts committed while pregnant, resulting in the eventual death of their child, it could clearly have done so. Moreover, had defendant's fetus died in utero, then, plainly, defendant could not have been prosecuted under the manslaughter statute because the fetus would not have fallen under the definition of a "person" (Penal Law § 125.05 [1]; see People v Vercelletto, 135 Misc 2d 40 [County Ct, Ulster County 1987] [dismissing the count of vehicular manslaughter in the second degree against a defendant who struck a car being operated by a pregnant woman, resulting in a stillbirth, holding that the stillborn fetus was not a "person" under the statute]; People v Joseph, 130 Misc 2d 377 [County Ct, Orange County 1985] [dismissing the counts of criminally negligent homicide and vehicular manslaughter against defendant for causing the death of an unborn child]).[4]

_____

[4] These cases and the present case are distinguishable from those cases where a third party has assaulted a pregnant woman, resulting in the death of the child after its birth (see e.g.

The People concede that, had defendant not consented to the cesarean section with the result that the child be born alive, she would not have been prosecuted for manslaughter in the second degree. Thus, if we accorded the word "person" the interpretation advocated by the People, it would create a perverse incentive for a pregnant woman to refuse a cesarean section out of fear that if her baby is born alive she would face criminal charges for her alleged reckless conduct, jeopardizing the health of the woman and the unborn fetus. This is plainly not what the legislature intended when it enacted the definition of "person" under section 125.05 (1) or the manslaughter in the second degree offense as delineated in Penal Law § 125.15 (1). To interpret the statutory provisions otherwise would enlarge their criminal reach beyond what the legislature intended (see People v Wood, 8 NY2d 48, 51 [1960] [providing that "(p)enal responsibility, unlike moral responsibility, cannot be extended beyond the fair scope of the statutory mandate"]).

The imposition of criminal liability upon pregnant women for acts committed against a fetus that is later born and subsequently dies as a result of injuries sustained while in utero should be clearly defined by the legislature, not the courts. It should also not be left to the whim of the prosecutor. Conceivably, one could find it "reckless" for a

_____

People v Hall, 158 AD2d 69 [3d Dept 1990], lv denied 76 NY2d 1021 [1990]).

- 7 -

pregnant woman to disregard her obstetrician's specific orders concerning bed rest; take prescription and/or illicit drugs; shovel a walkway; engage in a contact sport; carry groceries; or disregard dietary restrictions. Such conduct, if it resulted in premature birth and subsequent death of the child, could result in criminal liability for the mother. At present, such conduct, if it caused a stillbirth, would not result in criminal prosecution of the mother if the fetus died in utero. Any change in the law with regard to such matters would be within the province of the legislature.

Accordingly, the order of the Appellate Division should be reversed, and the remaining count of the indictment dismissed.

The People of the State of New York v Jennifer Jorgensen

No. 179

FAHEY, J.(dissenting):

I respectfully dissent and would affirm the Appellate Division's order.  I cannot join in a result that analyzes our statutes to determine that a six-day-old child is not a person.[1]

On the afternoon of May 30, 2008, defendant was the operator of a motor vehicle traveling on Whiskey Road, a curvy thoroughfare in a heavily wooded area of Suffolk County that was divided by a double-yellow line and that provided one lane of travel in each direction.  According to the People, defendant, who was 34 weeks pregnant, was under the combined influence of alcohol and a prescription drug, using a mobile telephone, and speeding at the time.  Undisputed is the fact that the vehicle operated by defendant crossed from its lane of travel into the path of an oncoming vehicle occupied by Robert and Mary Kelly.  As a result of the collision that ensued, both of the Kellys died and defendant's baby was delivered via an emergency cesarean section. Ultimately, however, the baby's respiratory, renal, and

---

[1]     Defendant raises several contentions on appeal, and in my view none has merit.  Given the narrowness of the majority opinion, however, I will limit my discussion to the core question on this appeal, that is, whether the six-day-old child was a "person" within the meaning of Penal Law § 125.15 (1).

- 1 -

neurological problems proved insurmountable, and she died six days after her birth as a result of what the autopsy report characterized as "hypoxic encephalopathy and prematurity" due to "abruptio placentae," which in turn was attributed to "maternal blunt force trauma."[2]  Following various events immaterial to the main issue on this appeal, defendant was charged by indictment with three counts of manslaughter in the second degree (Penal Law § 125.15 [1]) with respect to the deaths of each of the Kellys and the baby.  The ensuing jury trial saw defendant acquitted of the manslaughter counts related to the Kellys[3] but convicted of the manslaughter count pertaining to the baby, and on appeal the Appellate Division affirmed the judgment (113 AD3d 793 [2d Dept 2014]).

I agree with the majority that this issue is strictly one of statutory interpretation (majority op., at 3), but I disagree with its reading of the pertinent statutes.  My analysis begins with Penal Law § 125.05, which is entitled "Homicide,

---

[2]     Hypoxic encelphalopathy is a condition that occurs when the brain is deprived of oxygen, whereas abruptio placentae (also known as placental abruption) is the premature separation of the placenta from the uterus.

[3]     To be clear, the trial considered the aforementioned manslaughter counts, as well as one count each of aggravated vehicular homicide (Penal Law § 125.14) and driving while ability impaired by the combined influence of drugs or of alcohol and any drug or drugs (Vehicle and Traffic Law § 1192 [4-a]) that were levied in a prior indictment.  The latter counts survived defendant's motion to dismiss the prior indictment, and the jury acquitted defendant of those counts as well as of the counts of manslaughter in the second degree pertaining to the Kellys.

abortion and related offenses; definitions of terms." As its title suggests, section 125.05 contains "definitions . . . applicable to [Penal Law] article [125]." Included in the terms defined is "person" which, "when referring to the victim of a homicide, means a human being who has been born and is alive" (§ 125.05 [1]).

Based on that language alone, a reasonable mind perhaps could conclude that the Penal Law does not provide for criminal liability for manslaughter in the second degree in this context. However, section 125.05 is to be read in tandem (see generally Matter of Wallach v Town of Dryden, 23 NY3d 728, 744 [2014], rearg denied 24 NY3d 981; McKinney's Cons Laws of NY, Book 1, Statutes § 97) with, inter alia, Penal Law § 125.00, which is entitled "Homicide defined" and which states that

> "[h]omicide means conduct which causes the
> death of a person or an unborn child with
> which a female has been pregnant for more
> than [24] weeks under circumstances
> constituting murder, manslaughter in the
> first degree, manslaughter in the second
> degree, criminally negligent homicide,
> abortion in the first degree or self-abortion
> in the first degree."

Section 125.00 clearly states a legislative intent to protect both the born and "unborn child[ren] with which a female has been pregnant for more than [24] weeks." With that precept in mind I turn to Penal Law § 125.15 (1), which embodies the crime of manslaughter in the second degree of which defendant was convicted. Pursuant to that section, "[a] person is guilty of

manslaughter in the second degree when . . . [h]e [or she] recklessly causes the death of another person . . . ." "Recklessly" is defined in Penal Law § 15.05 (3), which states that:

> "A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he [or she] is aware of and consciously disregards a substantial and unjustifiable risk that such a result will occur or that such circumstance exists.  The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.  A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly with respect thereto."

Distilled to its essence, defendant's contention, which the majority credits, is that because her allegedly reckless conduct did not occur while the baby was a person, that is, because the allegedly reckless conduct occurred before the baby was born alive, she cannot be convicted of a crime that requires her reckless actions to have caused the baby's death.  I disagree because I see no such temporal qualification in the relevant parts of the Penal Law.  Where, as here, the baby-victim is born alive but subsequently dies, the Penal Law allows for the conviction of a defendant-mother of manslaughter in the second degree where the acts causing that baby's death occurred before that infant was born.

The pertinent parts of the Penal Law speak to victims as they *are*, not as they *were* at the time the acts giving rise to

the crime were committed.  There is no pregnant mother exception from criminal liability for reckless acts that result in the death of a mother's baby postpartum.  Indeed, Penal Law § 125.15 (1) does not require that the reckless conduct contemplated therein have occurred while the victim was a person, and the definition of "recklessly" provided in section 15.05 (3) contemplates that a *present act* yielding a *future result* will come within its ambit.[4]

In so concluding I note that the Appellate Division reached a similar result in People v Hardy (128 AD3d 1453 [4th Dept 2015], lv denied 25 NY3d 1202 [2015]).  There, the "conviction arose from an incident that began when [the defendant] fled the scene of an attempted petit larceny" in an automobile.

> "During that flight, [the defendant's]
> vehicle crossed the center line [of the road
> on which it traveled], side-swiped a car,
> then collided head-on with another vehicle

---

[4]     My conclusion does not defy the rule of lenity given my view that only one construction of the relevant statutes is plausible (see People v Golb, 23 NY3d 455, 456 [2014], cert denied 135 S Ct 1009 [2015] ["(i)f two constructions of a criminal statute are plausible, the one more favorable to the defendant should be adopted in accordance with the rule of lenity"] [internal quotation marks omitted]).  Similarly, my conclusion does not breach the principle articulated in Judge Jones's concurrence in People v Valencia (14 NY3d 927 [2010]) " 'that the physical conduct and the state of mind must concur,' " and " 'that there is concurrence when the defendant's mental state actuates the physical conduct' " (id. at 933-934 [Jones, J., concurring], quoting LaFave, Substantive Criminal Law § 6.3 [a], at 451 [2d ed] [footnotes omitted]) because here defendant's actions and her state of mind were one.

> driven by a woman who had been pregnant for
> approximately 23 weeks, causing her to
> sustain severe injuries.  In order to save
> the mother's life, her female child was
> delivered by cesarean section,"

and "[t]he child's heart beat for about 2 1/2 hours before she
died" (id. at 1453-1454).  The Appellate Division determined that
the evidence was legally sufficient to support the conviction of
manslaughter in the second degree (Penal Law § 125.15 [1])
"inasmuch as the child 'was a "person" from the moment of her
birth . . ., notwithstanding that [the] defendant may have
perpetrated the act that caused the injury prior to her birth' "
(id. at 1455, quoting People v Hayat, 235 AD2d 287, 287 [1st Dept
1997], lv denied 89 NY2d 1036 [1997]).

Similar to Hardy is People v Hall (158 AD2d 69
[1st Dept 1990], lv denied 76 NY2d 1021 [1990]), wherein the
Appellate Division applied the "born alive" rule.  That rule
provides that "a person [cannot] be convicted of an offense
involving homicide unless the victim, including a child whose
death was the result of prenatal injuries, was first born alive"
(id. at 77; see People v Hayner, 300 NY 171, 174 [1949]
[enunciating the "born alive" rule]).  In Hall the defendant had
shot a pregnant woman in the abdomen, which caused that woman to
give birth by cesarean section to a baby who lived for 36 hours
before dying "from a series of [injuries] attributed to
prematurity and oxygen deprivation" (Hall, 158 AD2d at 71).
Based on those circumstances the defendant was convicted of,

inter alia, manslaughter in the second degree (see id. at 72),
and the Appellate Division affirmed that judgment of conviction,
essentially reasoning that because the baby had been born alive,
it constituted a "person" within the meaning of Penal Law §§
125.05 (1) and 125.15 (see Hall, 158 AD2d at 73-77).

Hardy and Hall are factually different from this case
in that the perpetrator in each of those matters was not the
mother of the deceased child.  The instant statutes, however, do
not draw a distinction between violence perpetrated against an
"unborn child" (Penal Law § 125.00) later born alive by that
child's mother and violence perpetrated against the same child by
a third party (cf. majority op., at 6).

I appreciate that my conclusion could promote the
obtuse scenario of encouraging one situated similarly to
defendant to allow her unborn child to die within her following
like misconduct.  Indeed, here, had defendant avoided a cesarean
section following the collision and the death occurred in utero,
she could not have been charged with manslaughter in the second
degree, which is a class C felony (Penal Law § 125.15), for the
simple reason that the "person" element of that crime could not
have been met (see § 125.05 [1]).  Had that scenario come to
pass, defendant conceivably could have been charged with the
class E felony of abortion in the second degree (§ 125.40) or the
class D felony of abortion in the first degree (§ 125.45), but
both of those crimes have an intent element that would likely

have been impossible to prove in the context of this automobile accident. That hypothetical point notwithstanding, "a perpetrator of illegal conduct takes his [or her] victims as he [or she] finds them" (Hall, 158 AD2d at 79). The statutory scheme in question reflects a legislative prerogative that we have no legal basis to modify.

Here it is beyond dispute that the baby was born alive following the collision but died six days later as a result of injuries caused by the reckless conduct of her mother. Through Penal Law article 125 and, more particularly, Penal Law § 125.15 (1), the legislature consciously chose to place events such as these in the class of circumstances that may constitute manslaughter in the second degree. Based on those plain provisions of the Penal Law, I conclude that the baby was a person in the eyes of the Penal Law, that the mother can be held accountable under section 125.15 (1) for the baby's death, and that the Appellate Division's order should be affirmed.

* * * * * * * * * * * * * * * *

Order reversed and the remaining count in the indictment dismissed. Opinion by Judge Pigott. Chief Judge Lippman and Judges Rivera, Abdus-Salaam and Stein concur. Judge Fahey dissents and votes to affirm in an opinion.

Decided October 22, 2015